## Benjamin B. Morris vs. Orville C. Morris.

A decretal order in a foreclosure suit in Chancery, settling the allowance of payments on the mortgage, and referring the cause to a Commissioner for computation of amount due on the basis of such allowance, is an interlocutory proceeding merely, and will be brought to this Court for review by appeal from the final decree for sale of the mortgaged premises.

A complainant in Chancery must be prepared to support his own case, and to meet any evidence fairly controverting it. Nothing will be regarded as admitted by the answer, unless expressly admitted. The allegation in a foreclosure suit that the debt is all due, is essential; and any proof is fairly receivable to disprove it which would be receivable under the general issue at common law.

Endorsements upon notes, unexplained, prove payment; and whether explained or not, prove an extinguishment and release of liability to their extent as between the parties, unless it be shown that they were not intended so to operate.

The right which the statute confers upon an administrator, in case of a deficiency of assets, to institute proceedings to avoid fraudulent dispositions of property by the intestate, can not be assigned by him. And therefore one who takes from an administrator a note and mortgage given to the intestate, upon which is an endorsement made by authority of the intestate, and intended by him to discharge to that extent the debt, can not attack such endorsement as fraudulent against creditors, though he himself be a creditor, and the estate insolvent.

*Heard May 22d and 24th. Decided June 4th.*

Appeal by complainant from the Oakland Circuit in Chancery.

The bill was in the ordinary form of foreclosure bills, and alleged,—

That, on the 15th day of August, 1843, Orville C. Morris executed to William Morris thirteen promissory notes, twelve for three hundred dollars each, and the thirteenth for four hundred dollars, and payable from one to thirteen years thereafter—the last six of which are alleged to be unpaid, and to be held by complainant; that, to secure the payment of said notes, said Orville, on the same day, executed to said William a mortgage on certain premises in Oakland county, therein described, which mortgage was duly acknowledged and recorded; that William Morris died in September, 1844, and Elijah S. Fish, Isaac I. Voorhies, and Nathan Davis were appointed by the Probate Court of Oakland administrators on the estate of said William Morris, and took

upon themselves that trust; that said administrators, on the 18th day of August, 1848, executed to complainant an assignment of said mortgage, and that the whole amount of said six notes, with interest from date, is now unpaid.

The answer of defendant admits the giving of the notes and mortgage; states that they were given for the purchase-price of the premises described in the mortgage; denies that there is anything due on these notes, but says they have been fully satisfied and paid, and that payment is endorsed thereon, and that such endorsement was made by William Morris in his lifetime.

The cause being put at issue by replication, the parties took proofs, as follows:

The complainant introduced the mortgage and notes, and the assignment thereof, the material part of which was as follows: "For and in consideration of the sum of one dollar, to us, Elijah S. Fish, Isaac I. Voorhies, and Nathan Davis, administrators on the estate of William Morris deceased, paid by Benjamin B. Morris, the receipt whereof is hereby acknowledged, and other good considerations us thereunto moving, we hereby sell, assign, and transfer to the said Benjamin B. Morris, his heirs, representatives, and assigns, a certain indenture of mortgage, made and executed by Orville C. Morris to William Morris, bearing date the 15th day of August, A. D. 1843, and all our right, interest, property, and equity therein and thereto, and the promissory notes accompanying the same which are unpaid, being nine in number, and hereby authorize the said Morris, his heirs, representatives, and assigns to collect the same."

The remaining evidence is fully set forth, and the case sufficiently stated, in the opinion of the Court.

*Lockwood & Clarke*, and *C. I. Walker*, for complainant:

1. Parties in chancery, as well as at law, are bound by the issues which are formed by the pleadings. *Payment* of the notes is in this case the single issue upon which the

defense is rested. We deny that there is any proof of *payment* whatever.

2. Payment, both in the sense of lexicographers and lawwriters, is the delivery of money, or other valuable thing, for the purpose of discharging an antecedent obligation.— *Busbee's Law*, 336; 19 *Barb.* 460; 4 *T. B. Monr.* 173; 6 *Conn.* 373; 11 *Pa. S. R.* 174.

The endorsements on the notes are merely receipts, and subject to explanation by parol.—1 *Aiken*, 311; 2 *Mass.* 397; 2 *Vt.* 138; 21 *Ibid.* 222; 17 *Maine*, 369; 9 *Johns.* 310; 12 *Ibid.* 521; 5 *B. & Ald.* 606; 3 *B. & Adol.* 331.

A note can not be discharged without satisfaction, except by release under seal.—13 *Johns.* 87; 1 *Cow.* 122. Nothing but actual payment of the debt, or cancellation of the mortgage, will discharge a mortgage.—17 *Maine*, 371; 23 *Ibid.* 391; 1 *Barb.* 397. The endorsements here can, in no sense, be treated as payment.

3. The endorsements, being without legal consideration, constituted a mere gift.

4. Such gift, made by an insolvent debtor, is void as to his creditors, even in the absence of any fraudulent or corrupt intent.—3 *Johns. Ch.* 481; 4 *Ibid.* 450; 1 *Conn.* 525; 1 *Am. Lead. Cas.* 62; 8 *Barr*, 213; 2 *Bland*, 26; 1 *Wright*, 213; 2 *O. S. R.* 273; 4 *Wash. C. C.* 137; 13 *How.* 92; 1 *Hoff.* 419; 3 *N. H.* 55; 17 *Mass.* 222.

5. It appearing that the grant was voluntary, and the grantor or donor insolvent, the donee must establish affirmatively the fairness of his title, or it will be decreed void as to creditors.—2 *Md. Ch. Dec.* 447; 3 *Ibid.* 99; 2 *Brock.* 132; 25 *Miss.* 146.

6. An administrator is not only the representative of his intestate, but he is also the trustee for the creditors, to the extent of their interests in the estate. And he may, as the representative of the creditors, treat the voluntary conveyances or gifts of the deceased as void.—15 *Maine*, 430; 17 *Mass.* 222; 8 *Pick.* 254; 20 *Ibid.* 321; 2 *Watts*, 226; 6 *Ibid.*

453; 3 *Conn.* 289; 11 *Ibid.* 283; 2 *Hill*, 182. Our statute expressly clothes the administrator with this power. — *Comp. L.* § 2913; 10 *Paige*, 218.

The administrators, therefore, in favor of creditors, were authorized to treat such endorsements as fraudulent and void. They had no right to treat them otherwise. It is true defendant, by Davis's testimony, seeks to limit the assignment the administrators made to the amount due on the notes, regarding the endorsements as valid. But this is not a fact which can be proved by parol, in contradiction of the written assignment. If true, it convicts the administrators of conniving at a fraud; which this Court will set aside as promptly as if it were the act of the debtor only.

*M. L. Drake* and *M. E. Crofoot*, for defendant:

1. The decree of the 11th of April, 1857, was a final order and decree, by which the legality of certain endorsements upon the notes and mortgage was determined in favor of the defendant, upon the hearing on the pleadings and proof, and after considering the arguments of the counsel. It was a decree from which the party complainant, if aggrieved, might have taken his appeal to this Court, and no question that was determined in and by that decree, can, owing to the lapse of time, be now reviewed.

By that decree, the entire subject-matter in controversy between the parties was determined by the Court; and if that can not now be reviewed upon this appeal, there is no further question before the Court, in this case, for determination, as there is nothing in the decree of the 2d of December, 1857, save those things which are "matters of course." — 2 *Doug. Mich.* 299; 2 *Barb. Ch.* 281; 3 *Ibid.* 383.

2. The evidence introduced to show that the estate of William Morris was insolvent, and largely indebted to complainant, was received under objection, and is not competent. There is no allegation in the bill, or issue formed by the

pleadings, that will justify such proof. There is no allegation that William Morris was insolvent, or that the complainant was a creditor, or that the endorsements upon the notes were fraudulent or void, either as against the complainant or other persons; and evidence tending to prove such facts can not be considered.—10 *Wheat.* 181; 11 *Pet.* 249; 7 *Wheat.* 522; 1 *Barb. Ch. Pr.* 131, 133; *Ibid.* 38, 39; *Story's Eq. Pl.* § 258; *Ibid.* § 28; *Cooper's Eq. Pl.* 5, 7; *Gres. on Ev.* 22, 23; 6 *Johns.* 564; *Mit. Eq. Pl.* 43; 2 *Mad. Ch. Pr.* 228.

3. The bill of complaint does not contain any allegation of any fact or circumstance in anywise connected with the notes or mortgage, which entitles complainant to any relief, or is connected with any equity, that does not appear from an inspection of the notes and mortgage.

4. In the bill of complaint there is made claim only to such rights as were sold and assigned by the executors. They could sell only such things "as were to the testator's use"; and no other rights were acquired by the complainant, as the assignee.—*Fondblanque, Am. Ed. p.* 575; *Wms. on Exs. vol.* 2, *p.* 1408.

5. The endorsements were for a lawful purpose, and rightfully made.—*Jackson vs. Peek,* 4 *Wend.* 300.

CAMPBELL J.

The complainant filed his bill, as assignee from the administrators of William Morris deceased of six several notes, being part of thirteen originally given, with an accompanying mortgage, executed by the defendant to William Morris on the 15th day of August, 1843. The bill was filed to foreclose the mortgage, and alleged the whole amount of the notes in complainant's hands to be due and unpaid. The bill sets forth the death of William Morris in 1844, and the assignment from his administrators in 1848. It is in the usual form of foreclosure bills, and waives an answer under oath. The answer admits the execution of the mortgage and notes, but leaves the complainant to proof of his assignment. It

denies that the notes or any part of them are still due, and alleges that they have been satisfied and paid, and that the payment is endorsed on them, and that such endorsement of payment was made by William Morris in his lifetime.

Proofs were taken, showing the execution and assignment of the notes and mortgage; and upon the notes, as produced, endorsements appeared, made by William Morris, September 2d, 1844, acknowledging payments to the amount of nineteen hundred dollars. Probate proceedings were proved, showing debts in favor of complainant and others against the estate of William Morris, and that the estate was insolvent.

The evidence of Nathan Davis was also introduced, who testified as follows: "I was acquainted with William Morris (the father of said Orville C. Morris) in his lifetime. He resided in Bloomfield, Oakland county, in September, 1844."

A note, with endorsement in the following words, was then introduced: "$300. BLOOMFIELD, August 15, 1843. Seven years after date, for value received, I promise to pay William Morris, or order, three hundred dollars, with interest. [Signed; and signature canceled:] "ORVILLE C. MORRIS." [Endorsed:] "WILLIAM MORRIS." "Rec'd, 2nd September, 1844, one hundred dollars on the within note."

The witness testified in relation thereto as follows: "I have seen this note before. The endorsement on the back thereof is in my handwriting; the signature to this note is that of said Orville C. Morris—I saw him write it. I made the endorsement on the back of the note by the direction of William Morris, who then had the possession of the note. This note, with others, accompanied a mortgage. The mortgage was, I think, on the undivided half of what they called the 'farm and mill property,' and also the 'Blackington farm,' and what was called the 'old Morris' farm.' The amount of said mortgage was four thousand dollars. I think there were thirteen notes accompanying said mortgage; twelve notes of three hundred dollars each, and one of four hundred dollars. I endorsed on said notes the sum of two thousand

dollars, by the direction of William Morris — this was on several notes. William Morris directed his wife to get the bundle of notes and hand them to me, and he directed me to give up to Orville C. Morris two thousand dollars in amount of the last notes to become due. I was in a hurry, and proposed to endorse that amount on the notes, instead of stopping to compute the interest and surrender the notes. William Morris assented to this arrangement — said it would be the same thing. I then made the endorsements, as I before stated. This was on the 2d of September, 1844."

On his cross-examination, witness says as follows: "This transaction took place at the house of William Morris, in Bloomfield, in this county. Mr. Morris was quite sick at this time — in the last stages of his sickness; he died the same month, I think. There was no payment made by Orville C. Morris at that time. I don't know of any payment ever having been made by Orville C. Morris. I know there never was any, from the circumstance that William Morris gave his reasons why he wanted the endorsement to be made.

"At the time this property was sold by William Morris to Orville C. Morris there was no mortgage given, but Orville gave his notes for four thousand dollars, payable ahead from one to thirteen years, without interest. I think these notes were dated the same time with the note shown me. I was present at the time the notes without interest were given up, and notes for the same amount with interest and a mortgage were given. This mortgage is the one referred to in my direct-examination.

"Orville, at first, refused to sign these notes and mortgage, because they bore interest, but William Morris told him that Mr. Romeyn had told him that it was necessary that the notes should be on interest, and that if he would sign them, that he would it make all right with him. Orville C. Morris then signed them. At the time these notes were given, William Morris was able to be around, but he never recovered his health afterwards. I should think it was some

5 MICH.—M.

three, four, or five months before he died that these notes were executed. I think Mr. Morris died some time in September, 1844. At the time these notes were actually signed, they were dated back to the time of the original sale of the property.

"I suppose that the Mr. Romeyn referred to, was Mr. Romeyn, a lawyer of Detroit, as I know that Mr. Romeyn was Mr. Morris's counsel.

"After the endorsement was made upon the notes, I think they were handed back to Mr. Morris's wife. When I next saw these notes, they came into our hands as administrators on William Morris's estate. I presume that the note produced was one of them, as the notes all came into the hands of the administrators. The administrators sold the notes which were unpaid, and the mortgage. I think Orville C. Morris had paid all the notes which had become due before the sale. We sold the notes 'to B. B. Morris. I think they were transferred to B. B. Morris on a dividend due him from the estate, and so transferred to him at their amount less the endorsements. B. B. Morris, at this time, proposed to take the notes at the full amount, irrespective of the endorsements; he said he supposed he understood about the endorsements; but the administrators objected to thus turning them out, but would turn them out at what appeared to be due on them.

"The assets were not sufficient to pay the debts proved against the estate. I do n't remember what proportion of the debts was paid on the dividend."

On his further direct-examination, witness says: "At the time these endorsements were made, I believe that William Morris was perfectly sane, and capable of taking care of his business affairs. Mr. William Morris assigned as a reason for making these endorsements that Mr. Cook said that Orville had agreed to pay more than the property was worth, and that there ought to be endorsed thereon from one to two thousand dollars; and also that Orville had originally given notes without interest, and had changed them for notes and

mortgage drawing interest. There was nothing said at this time about the promise that he would make it all right, but that promise was made by William Morris at the time the notes and mortgage were signed by Orville, and in my presence."

The case coming to a hearing on pleadings and proofs, the Court, on the 11th of April, 1857, ordered that the endorsements should be allowed, and directed a reference, for a computation, on that basis. On the 2d of December, 1857, a decree of foreclosure and sale was made upon the report of the commissioner; and from the last mentioned decree an appeal was taken to this Court.

A preliminary point was made by the counsel for the appellee, that, inasmuch as the decretal order of April 11th settled the question of allowance of the payments, an appeal from the decree of December 2d could not bring up that question. This position is not well founded. That was an interlocutory proceeding, upon which the final decree was based, but which of itself granted no relief and performed no active function. The decree of foreclosure is the only one which disposes, in any effectual manner, of the rights of the parties. The whole case is properly before us.

The complainant objects that the defense made by the proofs varies from that set up in the answer, and should not be regarded. It is urged on his behalf that the answer sets up the specific defense of payment, and that the facts do not prove payment, and that there is no other issue in the case. Even if the answer sets up no other specific defense, the rule contended for by the complainant is not founded on the settled rules of chancery pleadings.—1 *Barb. Ch. Pr.* 138; 3 *Atk.* 496—9; 1 *Y. & Col.* 145.

No doctrine is better settled than, that nothing stated in the bill is to be regarded as admitted unless expressly admitted.—1 *Dan. Ch. Pr.* 973, 975. Where an answer is required under oath, the complainant can except for insufficiency, if the answer does not meet every material point, by admission,

denial, or want of knowledge. But where an answer under oath is waived, no exception can be taken for insufficiency, and complainant must be prepared to support his own case, and to meet any evidence fairly controverting it:

The allegation that his debt is all due, is essential; and any proof is fairly receivable on this issue which would be receivable under the general issue at common law. Payment of a debt not in specialty, may be thus proved. And, inasmuch as a plaintiff must always produce the security sued upon, or account for its absence, it would be a somewhat startling doctrine that he could produce a note bearing upon its face evidence of extinguishment, and call upon the opposite party to prove the apparent infirmity. The endorsements on these notes, unexplained, prove payment, and, whether explained or not, prove an extinguishment and release of liability as between the parties, unless it be shown that they were not intended so to operate. In either case, they show that the face of the notes is not an existing liability, and must, to their extent, defeat the action. It is entirely immaterial by what name we call them. If their legal effect is such as to reduce the debt, there is no escape from that result, if such was the intention of the parties.

The testimony of Mr. Davis shows that William Morris had received the mortgage and notes, amounting to four thousand dollars, and bearing interest, in lieu of the same amount not on interest, and running, as these did, through thirteen years; that Orville had given them for the purchase of the mortgaged premises, and had given from one to two thousand dollars more than the premises were worth; and that, when the notes and mortgage were given for the increased amount, William Morris had promised Orville to make it right with him. The endorsements were made merely because Mr. Davis had not time to make the necessary calculations, and were made at his suggestion, instead of giving up notes to the same amount, which William Morris directed at the time, the change of arrangements being made with his assent.

We can not entertain any doubt that these endorsements carried out fully the deliberate intention of the parties.

When the complainant purchased the notes and mortgage, the administrators informed him how much was due, and refused to transfer them for any greater amount than appeared due after allowing the endorsements. He now claims to recover the full original amount, on the ground that there was no consideration for the agreement between William Morris and Orville C. Morris; and that the arrangement was void as to the creditors of the former; and that complainant, as a creditor, can attack it for fraud.

The case does not show, with certainty, the entire adequacy or inadequacy of the consideration; and if this question were material, we could not presume fraud, without more proof of it. But the complainant does not present himself before the Court in a character which allows him to raise such an issue. He claims his rights entirely by virtue of an assignment from the administrators of William Morris. We are not aware of any principle of law which will authorize administrators to convey greater rights than their intestate possessed. They succeed to his rights, and to no more. As their assignee, the complainant takes what came into their hands as part of the estate. An act, void as against creditors, is good between the parties, and can only be attacked by creditors by some method recognized in law. The statute very justly provides that, in case of a deficiency of assets, and in no other case, an administrator may institute proceedings to avoid such dispositions, made by the intestate, as were fraudulent against creditors. — 2 *Comp. L.* § 2913. He is not required to do this, unless indemnified by the creditors. He can not assign any such right. A court of equity will not countenance the assignment of a cause of action for a tort, or to set aside a conveyance, or other act, as fraudulent. — 2 *Spence Eq. Jur.* 868, 869; *Prosser vs. Edmonds*, 1 *Y. & Col.* 481; *Carroll vs. Potter*, *Walk. Ch.* 355.

The only reason why an administrator can take measures

to reclaim the assets is, that he represents the creditors at large, and unless the fruits of the litigation come into his hands. the creditors will not obtain an equal distribution. He is bound to make no preferences among them. His assignee can have no right to demand more than he has purchased. As assignee, he has not been damnified; as creditor, he has no remedy, except through the administrator, and must indemnify him before he can demand his action. He has preferred to take the assignment, and he must abide by his election. The equitable purposes of the statute would not be advanced by allowing a purchaser from an estate to speculate out of frauds which do not concern him in that capacity, and to appropriate to his own use that which, if recovered, should go to all creditors alike. If, then, complainant had established beyond a doubt that the settlement between William and Orville Morris was illegal as against creditors, it would not avail him here.

The Court below acted properly in reducing the claim to the balance left after applying the endorsements. The decree below must be affirmed.

MARTIN Ch. J. and CHRISTIANCY J. concurred. MANNING J. did not sit in the case.