(Superior Court of Cincinnati.)
Special Term, 1898.

HERTENSTEIN, a taxpayer, v. AUGUST HERRMAN, LEOPOLD MARKBREIT, MAURICE J. FREIBERG, C. M. HOLLOWAY and WILLIAM B. WELSH.

---

*Contracts for the construction of new Cincinnati Water Works—Specifications before letting contract, required.*

(1). The provisions of the law authorizing the construction of a water-works in Cincinnati, (92 O. L., 606), in which it is provided that contracts can be made only after specifications have been made and advertisement had as to the work to be let, are mandatory, and any contract made in violation of such provisions is null and void.

(2). Where specifications for the grading of certain grounds, roads and certain portions of the Ohio river bank, the revetment of certain slopes and the excavation of a certain well as a part of the construction of the water-works system are made in the alternative form, and the final determination as to what the specifications shall be, is not made until the bids are received and opened, such specifications do not comply with the law, and a contract based upon the same is illegal and void: and no recovery can be had either under the contract or upon a quantum meruit for services rendered or material furnished.

(3). Whether a taxpayer may be estopped by delay from asserting the invalidity of such a contract is a question not present in this case for the reason that the facts of the case show deligence in the bringing and the prosecution of the case.

SMITH, J.

The plaintiff, a taxpayer of the city of Cincinnati, having first requested the corporation counsel of said city to bring this case and said counsel having refused so to do, has brought the same on his own behalf as a taxpayer, as is provided may be done by sec. 1777 and 1778 of the Revised Statutes of Ohio.

The defendants, August Herrmann, Leopold Markbreit, Maurice J. Freiberg, C. M. Holloway and William B. Melish, constitute the board of trustees known as the "Commissioners of Water Works" of the city of Cincinnati, created by the act of 1895, (92 V. 506), and found in sections 2435-1 to 2435-18 inclusive, of the Revised Statutes.

Said trustees having in contemplation the grading of certain grounds, roads and certain portions of the river bank of the Ohio river, the revetment of certain slopes and the excavation of a certain clear well, as a part of the construction of a water works system for the city of Cincinnati, advertised for bids for said work according to certain plans in their office with the following specifications:

"All bids for the grading, masonry, and construction of roads near California for the water-works for the city of Cincinnati will be compared on the basis of the chief engineer's approximate estimate of the quantities of work to be done, which is as follows:

| | | | |
|---|---|---|---|
| 1. | Stripping | 3,250 | cubic yds. |
| 2. | Embankment—Site of Pumping Station | 94,500 | ,, ,, |
| 3. | Embankment, levee railroad bank, and filter grounds, south of Ebersole Lane | 133,800 | ,, ,, |
| 4. | Embankment — Relocated part of New Richmond Pike | 7,600 | ,, ,, |
| 5. | Rolling embankment and macadam | 52,100 | ton-miles. |
| 6. | Excavation — Slope of river bank | 31,000 | cubic yds. |
| 7. | Excavation for foundations | 300 | ,, ,, |
| 8. | Excavation for surface ditches | 50 | ,, ,, |
| 9. | 24-inch cast-iron pipe drains | 156 | lineal ft. |
| 10. | 24-inch vitrified-stone pipe drains | 186 | ,, ,, |

| | | |
|---|---|---|
| 11. Brick arch masonry | 120 | cubic yds. |
| 12. Stone masonry in portals of arch culverts .............. | 150 | ,, ,, |
| 13. Stone masonry in head-walls of cast-iron and stone pipe drains .......... .... | 40 | ,, ,, |
| 14. Concrete........... | 194 | ,, ,, . |
| 15. Stone paving in cement ........... | 7 | cubic yds. |
| 16. ⎰ Dry paving or rip-<br>17. ⎱ rap .............. | 13,538 | ,, ,, |
| 18. ⎰ Sodding or sowing<br>19. ⎱ in grass........ | 1,292 | squares. |
| 20. Macadam in roadway ............... | 2,420 | cubic yds. |

The quantities given above are approximate only, and the board of trustees, "commissioners of waterworks," reserve the right to increase or diminish the amount of any or all classes of work, or to dispense with any of them altogether, as they may deem best in the interest of the city of Cincinnati."

Pursuant to said advertisement the board of trustees received bids which were referred to the engineer for computation, who reported, as was the fact that if riprap and seeding were used C. A. Phelan would be the lowest bidder, his bid under such conditions amounting to $96,733.60; but if dry paving and sodding were used, the David Folz Asphalt Paving Company would be the lowest bidder, its bid under such conditions amounting to $109,381.80.

The explanation of this peculiar result is found in the fact that items 16 and 17 call for dry paving or riprap, and items 18 and 19 call for sodding or sowing in grass, and that the bid of Phelan was the lowest on the items of riprap and sowing in grass, while the bid of the David Folz Co. was the lowest on the items of dry paving and sodding.

Subsequently the board concluded that it would use a greater quantity of dry paving and sodding than it would use of riprap and sowing in grass, and thereupon awarded the contract to the David Folz Company.

The main contention of the plaintiff is. that the action of the board in awarding the contract to any one was illegal and void for the reason that the specifications were illegal.

Section 7 of the water-works act provides that: "Said commissioners in constructing such works or such enlargements, extensions, improvements or additions, shall also have power and authority and be governed in respect of contract as follows: * * * Said commissioners shall before entering into any contract, cause plans and specifications, detailed drawings and forms of bids to be prepared, and careful estimate of cost to be made; and when adopted by them, they may, in their discretion cause the plans and drawings to be multiplied and printed, by photographing, lighographing or other suitable process and the specifications and forms of bids, contracts and bonds to be prepare and have the same printed for distribution among the bidders."

It is further provided that: "Said commissioners shall not enter into any contract for work in the construction and completion of said waterworks system, without first causing thirty days' notice to be given in one or more newspapers of general circulation in such city, that sealed proposls will be received for doing the work or furnishing the materials."

To assist the board in its work including the drawing of plans and specifications and the making of estimates, the board is authorized:

"To employ such superintendents, engineers, clerks, laborers and other employees, as they may deem necessary and to fix their compensation."

I believe the proposition to be beyond dispute that the preparation of plans and specifications of the work to be done is a vital condition to the entering into any contract by the commissioners, with respect to a work of this magnitude.

It is true that my attention has not been directed to any case in which it has been held in Ohio that where the law requires the making of such plans and specifications before the making of a contract that the omission to make such plans and specifications deprives the public authorities of the right to make the contract; but if

authority be lacking, the explanation to my mind would be that it was because the proposition was so plain and self-evident that either the question had not been raised, or if raised, the decision of the question had not been regarded of sufficient importance to be reported.

One or two citations with respect to the obligations generally of the municipal authorities to observe such provisions with respect to the mode of making contracts will suffice.

In Dillon on Municipal Corporation, sec. 449 (Fourth Edition) it is declared that:

"Respecting the mode in which contracts by corporations should be made, it is important to observe that when, as is sometimes the case, the mode of contracting is specially and plainly prescribed and limited, that mode is exclusive, and must be pursued or the contract will not bind the corporation; but the courts have sometimes regarded the provisions on this subject as directory."

But in Campbell v. Cincinnati, 49 Ohio St.. 474, the supreme court while recognizing the difficulty of laying down any general rule as to when the provisions of a statute are merely directory, and when mandatory or imperative, nevertheless adopted as one rule that which the supreme court of Michigan in Clark v. Crane, 5 Mich., 151, had declared, viz:

"That what the law requires to be done for the protection of the taxpayer is mandatory and cannot be regarded as directory merely."

In the case of Stem v. The City of Cincinnati, 6 Nisi Prius, 15. I reached the conclusion that the true rule by which to determine whether a statute was mandatory or directory was that declared in 5 Mich. 171, and referred to approvingly in Campbell v. Cincinnati, although at the time the decision in case of Stem v. City was rendered I was not aware that the supreme court in Campbell v. The City had announced the same rule.

This principle has received a further and later endorsement from the supreme court in the case of City of Lancaster v. Miller, 40 W. L. B., 113,

in which the court having occasion to construe sections 1693, 2303 and 2702 of the municipal code, which sections relate to the requirements that no contract exceeding five hundred dollars shall be entered into unless there has been a previous advertisement for bids, and unless the auditor of the corporation shall have previously certified that the money required for the contract is in the treasury to the credit of the fund from which it is to be drawn, declared that:

"The evils against which these restrictive statutes are directed are municipal extravagance and the negligence and indifference of municipal officers. They were designed for the protection of municipal taxpayers generally, as well as to guard against excessive special assessments against property to pay for local improvements. The mischief arising from municipal prodigality and the growth of municipal debts that attend thereon called loudly for an efficient remedy. These restrictive statutes are the answers to that call. They embody that principle of sound public policy which seeks to enforce economy in the administration of public affairs. The judicial tribunals of the state should administer these laws so as to advance the purpose thus sought to be accomplished. Contracts made in violation of these statutes should be held to impose no corporate liability. Persons who deal with municipal bodies for their own profit should be required at their peril to take notice of the limitations upon the powers of those bodies which these statutes impose."

In view of the principle which we have seen is to determine the question whether a law relating to public officials is mandatory or directory, and in view of the rule of construction which is to control the courts in interpreting such laws as is declared by our supreme court in city of Lancaster v. Miller, the proposition seems to me beyond dispute that where a statute provides as it does in the waterworks law that: "Before entering into any contract the board shall cause plans and specifications, detailed drawings and forms of bids to be prepared

[COPYRIGHT, 1899, BY CARL G. JAHN.]

and careful estimates of costs to be made," a contract entered into without a compliance with such requirements is null and void. Because such require-ments are intended to restrain extravagance in the expenditureof the money ccntrolled by the board by making the price cf the work done for it less than it would be but for such requirements.

This result is accomplished by giving the bidder as exact a knowledge of the work to be done as is possible to give him in advance and thus to en-able him to calculate with exactness the cost of the work to him, whereas without such exact knowledge neces-sarily he must make allowances in his bid which with an exact specification before him he would not be required to make; and further, such certainty of knowledge as to the work to be done necessarily tends to increase the num-ber of bidders, and thus to increase competition and reduce the price of the work.

But whether or not the making of specifications is a vital condition precedent to the making of' a valid public contract in every case where the law requires specifications to be made, there can be nc question but that under the water-wcrks law the specifications are intended to have such a character, because it is ex-pressly provided in that law in para-graph four of section 7 which provides for the making of specifications, that "If a contract, agreement or order made or authorized by said commis-sicners be found to violate any of the provisions of this act, it shall at once become void and of no effect: and no money shall be paid or recovered for service rendered or materials furnished thereunder."

But conceding for the sake of argu-ment that the requirement as to spec-ifications is a mandatory provision of law, and cannot be omitted, yet it is contended that the board may adver-tise in the alternative fcrm as to var-ious classes of work tc be done and materials to be furnished, and after the bids are received it may then fin-ally determine what its specifications will be, and award the contract to that bidder whose bid is found to be the lcwest for the work according to the specifications adopted after the bids have been received. Such was the ccurse pursued in this case.

I am of the opinion that such a course violates both the letter and the spirit of the law. It violates the let-ter of the law, because the law ex-pressly requires that the specifications shall be adopted before the bids are called for; and it violates the spirit of the law, because it opens the door to favoritism and fraud by enabling a board after the bids are received to adapt the specifications to meet the bid of a favorite bidder. It is no an-swer to this position to say that the board may be ignorant of the cost of the different kinds of work it may contemplate until it receives bids for the same, and therefore ought nct to be compelled to adopt a plan which in the end may prove to be the most ex-pensive; because the board has power to employ engineers and such other employees as they may deem necessary to assist them in determining such questions, and furthermore has the privilege of rejecting all bids if it deems it best tc do so. If therefore its engineers have not advised it wisely, it may reject all bids and prepare new specifications until it is satisfied that it has secured the best and most eco-nomical plan.

It is contended for the defendants however that the decision of the com-mon pleas court of Franklin ccunty in the case of the state, on relation of D. N. Kelly v. the Board of Education of the City of Columbus, 20 W. L. B., 156 is in conflict with the conclusion reached in this case. In that case the board of education desiring to heat a school building advertised for plans, specifications and bids at the same time, the intention being to secure plans and bids of the various systems of heating in the market. The right tc do this involved the construction of 3988 of the Revised Statutes which governs certain school boards in mak-ing any improvemet exceeding five hurdred and fifteen hundred dollars. In construing the section the court held that it did not require specifica-

tions in advance of the bids. Assuming such to be the true construction of the section, the case presented was entirely different from that presented here where the law requires specifications in advance of the bids. The decision in this case therefore is not necessarily in conflict with that in state on relation of Kelly v. Board of Education; but if the decision of that case requires a decision of this case different from that above indicated, I must respectfully decline to follow it. The injunction prayed for in this case will be allowed.

Frederick Hertenstein, for Plaintiff.

Ellis G. Kinkead, Corporation Counsel.

J. B. Frenkel, for Defendants.

### Supplemental Opinion.

It was my understanding when this case was heard upon a former occasion that the hearing was to be final, and such, it seems was the understanding of counsel for plaintiff; but it appears that the corporation counsel did not so understand the matter, and at his request I have allowed an amended answer to be filed, and the final hearing to be had upon the issues as made by said amended answer.

The original answer was substantially a general denial of the material allegations of the petition. The amended answer, while reaffirming such general denial alleges further that the plaintiff did not bring this action in good faith as a taxpayer, and in behalf of the city of Cincinnati, but as the agent and attorney, and in behalf of one E. A. Phelan, a competing bidder for the contract; and alleges further that "under the contract in the petition described a large amount of work has been done by the David Folz Ashpalt Paving Company; that the work under said contract progressed to the knowledge of the plaintiff and without any effort or attempt on plaintiff's part to stop the same; that plaintiff filed no motion and made no application for a temporary restraining order in this cause, although requested so to do by the defendants and notified by the defendants that the work under said contract was progressing and could not be stopped without the risk of incurring liability to the said David Folz Asphalt Paving Company for breach of the contract described in the petition; and that because of said facts it is not lawful nor equitable that plaintiff should receive the relief prayed for."

The case is now to be disposed of upon the evidence taken at the first hearing together with the evidence heard upon the new issues made by the amended answer.

All of the evidence which bears upon the issues that the suit is not brought by the plaintiff as a tax payer in good faith was submitted upon the first hearing without objection by plaintiff, although the issue was not made by the pleadings. It was considered by me at that time, although no reference is made to that question in the opinion rendered, for the reason, that the testimony of plaintiff was so clear and positive upon the point, that being uncontradicted by any evidence except the circumstance that the plaintiff had represented one of the competing bidders at the time the contract was made, it was quite clear that I would not be warranted in disbelieving the plaintiff and dismissing the case, even if it be considered (a question upon which I express no opinion) that the motive of a taxpayer who exercises a right given him by the statute, to bring an action can be interposed as a defense to defeat his action.

This defense therefore, fails upon the evidence.

With respect to the next defense, viz: that the plaintiff allowed the work to proceed to such an extent before the bringing of the action and before the final hearing of the case, that he is equitably estopped from making complaint, the evidence may be briefly stated to be as follows:

The contract was entered into between the David Folz Asphalt Piaving Company and the commissioners of the water-works, on September 17th, 1898. At the time the award was made the plaintiff who was acting for Phelan & Company, who are a St.

Louis firm, openly protested against the award. The president of the board stated that he was glad the question was to be raised, as a prominent attorney of the city contended that the board had the power to let to the lowest and best bidder.

On September 24th, 1898, within one week from the making of the award, the plaintiff filed this suit.

On September 26th, the corporation counsel notified the board that the suit had been begun. On October 13th, the defendants filed their answer; on November 1st, the first hearing was had; and on November 19th, the decision was rendered. The month of September is one of the vacation months of the court, although one of the judges is daily in attendance to dispose of any business that is pressing. During October the court was engaged in general term work, hearing arguments in the morning and consulting during the afternoon, although one of the judges is always ready to dispose of pressing business in special term in the afternoons.

Immediately at the close of general term the case was taken up and heard out of its order upon the application of the plaintiff, but no application was ever made for such hearing by counsel for the defendants.

At the time the suit was filed, the contractor had only been at work about four days. Notwithstanding the pendency of the suit the work proceeded. At the time the decision was rendered, about $12,000 worth of work had been performed, and about $6,000 had been paid on the same. After the decision the work ceased and has not been resumed. It is further shown that the work thus far done is for a lower price than it would have been done under any of the other bids, that part of the work which was covered by the alternative specifications not having been reached.

Conceding for the sake of argument that a taxpayer who wishes to enjoin the "performance of any contract made in behalf of the corporation in contravention of the laws governing the same" must take steps to enjoin within a reasonable time after the making of the contract, the question to be determined is whether the plaintiff in this case has not acted within such reasonable time.

As a protest was filed with the board at the time the contract was made, which protest was sufficient to put the board and the successful bidder upon inquiry as to whether the provisions of the statutes had been complied with; and as such protest was followed by a suit a week later, and when only four days work had been done upon a contract involving over one hundred thousand dollars, it is difficult to see in what respect the plaintiff was guilty of any delay in the assertion of his rights as a taxpayer, or why the board and the successful bidder, when they continued in the work, did not assume all the perils which an ultimate decision of the case in favor of the plaintiff would entail upon them.

But it is contended that the unreasonable delay of plaintiff consisted not in a delay in beginning his action, but in not moving for a temporary restraining order, and in waiting for a final hearing of the case to determine his right to an injunction.

But a temporary restraining order can not be granted without the giving of a bond to indemnify the defendant in case the final judgment is in favor of the defendant. Sec. 5576, R. S.

I know of no rule in the prosecution of a suit in equity which requires the taxpayer to subject himself and sureties to such a liability, or to be held guilty of such a want of diligence in the assertion of his right against the performance of an illegal contract, that his petition must be dismissed.

And certainly no such rule should prevail in view of the fact that the defendant is not compelled to wait until the third Saturday after the second Monday following the filing of the petition before he files his answer, but may file the answer at any time, and the case being at issue may, as is the practice in this court, have it taken out of its order and heard as a case involving questions of public interest. Sec. 5134, R. S.

But as the answer was not filed until October 13th, and as the plaintiff

thereupon requested that the case be taken out of its order and be given a special setting, and the case was finally heard on November 1st, it is not only true that the plaintiff was not guilty of negligence, but it may be affirmatively stated that he prosecuted the case with unusual diligence.

For the reasons above stated I do not think the plaintiff has been guilty of any conduct either in the assertion of his rights or the prosecution of the same, which would prevent him from the relief prayed for in his petition.

I come now to the last defense, viz: that by sec. 1779, the court is empowered in a case of this character to make such an order "as the equity and justice of the case demands," and that therefore, as I understand the contention, the court should make an order for the payment of the David Folz Asphalt Paving Company of the unpaid balance of $6,000, which they claim is due them for work already performed.

It is true that section 1779, Revised Statutes, by the general language used therein, does give the court a certain discretion in making the order of injunction, yet the true interpretation of that section must undoubtedly be that what the statute expressly forbids, the court has no right under the guise of a so-called discretion to grant.

In the first opinion in this case, after calling attention to the requirement of the water-works law, that no contracts should be entered into unless the same was preceded by proper specifications, I directed attention to the further provisions in the fourth paragraph of section 7, that,

"If a contract, agreement, or order made or authorized by said commissioners be found to violate any of the provisions of this act, it shall at once become void and of no effect, and no money shall be paid or recovered for service rendered or material furnished thereunder."

Now, inasmuch as this contract is void because of a failure to comply with the provisions of the waterworks law, the law has expressly declared that no money can be recovered for any service rendered or materials furnished under such contract; and I am thus by the express terms of the statute precluded from attaching as a condition to the decree herein that such payment should be made by the city authorities.

For the reasons above stated, no ground exists for modifying the judgment heretofore made in this case.