# H. CASEMENT v. THOMAS CALLAGHAN.

## (159 N. W. 77.)

**Contract — minor — age — over eighteen years — voidable — enforceable — disaffirmance — when — statute.**

1. Under the statutes of this state, the contract of a minor over eighteen years of age is not void, but merely voidable; and such contract is enforceable unless disaffirmed in the manner and within the time provided by law.

**Infant — contract — avoidance — intent — act of disaffirmance — positive in character.**

2. An infant desiring to avoid a contract must signify his desire and intent to do so, not only by refraining from any act of affirmance, but by performing some positive act of disaffirmance which is of such character as to clearly show his intention not to be bound by his act.

Opinion filed July 22, 1916. Rehearing denied September 8, 1916.

From a judgment of the County Court of Ward County, *Murray, J.,* plaintiff appeals.

Reversed.

*Bradford & Nash,* for appellant.

Respondent executed and delivered the note sued upon while he was a minor over the age of eighteen years. The contract was subject to repudiation and disaffirmance upon his restoring the consideration received by him or by paying its equivalent with interest. Comp. Laws 1913, § 4340.

The contract was merely voidable. Luce v. Jestrab, 12 N. D. 548, 97 N. W. 848.

*Palda, Aaker, & Greene* and *I. M. Oseth,* for respondent.

There is no question of estoppel here involved on account of retention of the consideration or the benefits of the contract by defendant, after his incapacity was removed. The cases holding to the contrary are predicated upon acts or omissions of the promisor after he attained his majority. 22 Cyc. 512, and cases cited.

Note.—As to necessity of returning consideration in order to disaffirm infants' contracts, see note in 26 L.R.A. 177.

On avoidance of infants' contracts, see note in 13 Am. Dec. 131.

"The power to ratify does not exist during infancy, but the ratification can be only after attaining majority." 22 Cyc. 539, 601, 602, and cases cited.

The indorsee cannot complain, for he is bound to know all the disabilities of the maker and the defenses available against the instrument connected with such disabilities. McClain v. Davis, 77 Ind. 419; Downing v. Stone, 47 Mo. App. 144, 27 Century Dig. 1173.

The effective act which determines the life and validity to the contract, if ratified, is the ratifying act, or equivalent failure to act, and not the original execution ,and the ratification relates back to the date of the instrument. Conversely, a repudiation relates back to the execution, and renders the instrument void *ab initio*. 22 Cyc. 560, 602, and 607; McCarthy v. Henderson, 138 Mass. 310.

The law is loath to indulge in presumptions against infants, and the courts have always inclined to lay the burden of proving ratification upon him who claims it, under a voidable contract of an infant. 22 Cyc. 608, 613, note 11; Hoyt v. Wilkinson, 57 Vt. 404.

"Any act showing unequivocally a renunciation of, or a disposition not to abide by, a contract made during minority, is sufficient." 22 Cyc. 613.

"The thing to be delivered, if any, need not in any case be actually produced upon an offer of performance, unless the offer is accepted." Comp. Laws 1913, §§ 5811, 5821; McPherson v. Fargo, 10 S. D. 611, 66 Am. St. Rep. 723, 74 N. W. 1057.

"All objections to the mode of an offer of performance, which the creditor has an opportunity to state at the time to the person making the offer, and which could be then obviated by him, are waived by the creditor if not then stated." Comp. Laws 1913, § 5816.

CHRISTIANSON, J. This action was brought to recover upon a promissory note for $400, executed and delivered by the defendant to one Ed King, on August 3, 1908, and by its terms payable to said Ed King, on November 1st, 1908, with interest at 12 per cent per annum.

The complaint is in the usual form, and alleges that plaintiff is the owner and holder of the note. The defendant in his answer admits the execution and delivery of said note as alleged in the complaint; but denies any knowledge or information sufficient to form a belief as to

whether plaintiff is the owner of the note, and alleges that if he is such owner, that he became so after maturity. Defendant further alleges that at the time of the execution and delivery of said note he was a minor; that said note was given as and for the purchase price of certain horses then and there purchased by defendant from said Ed King; that thereafter, during the month of November, 1908, he (defendant) offered to return to the plaintiff and to said Ed King (the payee named in said note) all the property which he (the defendant) had received for said note. That said offer of defendant was refused, and the horses remained in the possession of the defendant during the winter of 1908 and 1909, and that all of them died. The trial in the court below resulted in a verdict and judgment in defendant's favor, and plaintiff has appealed from the judgment.

The only questions presented on this appeal arise under the defense of infancy. Under the laws of this state males under twenty-one years of age and females under eighteen years of age are minors. Comp. Laws 1913, § 4335. And "a minor cannot give a delegation of power, nor under the age of eighteen make a contract relating to real property or any interest therein, or relating to any personal property not in his immediate possession or control." Comp. Laws 1913, § 4338. But, "a minor may make any contract other than as above specified in the same manner as an adult, subject only to his power of disaffirmance under the provisions of this chapter [chap. 2, Civil Code 1913], and subject to the provisions of the chapters on marriage and on master and servant." Comp. Laws 1913, § 4339. In all cases other than contracts for necessaries for his support or that of his family, entered into by him when not under the care of a parent or guardian able to provide for him, or obligations entered into under the express authority or direction of the statute, "the contract of a minor, if made while he is under the age of eighteen, may be disaffirmed by the minor himself, either before his majority or within one year's time afterward; or in case of his death within that period, by his heirs or personal representatives; and if the contract is made by the minor while he is over the age of eighteen, it may be disaffirmed in like manner upon restoring the consideration to the party from whom it was received or paying its equivalent with interest." Comp. Laws 1913, § 4340.

In construing these statutory provisions in Luce v. Jestrab, 12 N. D.

548, 97 N. W. 848, this court said: "The conflict·which exists in judicial opinion elsewhere as to the legal effect of contracts of minors, and as to the steps necessary to avoid such contracts, has·been removed in this state by statute. . . .

"It is entirely clear under § 2703, Rev. Codes 1899 [now § 4340, Comp. Laws 1913], that the contract of a minor who is over eighteen years of age is not void, but merely voidable,—that is, it is enforceable unless disaffirmed within the period and in the manner provided by the statute; and, further, that his liability rests upon his contract, and not upon a *quantum meruit.* . . . When he purchased the team he was over eighteen years of age. His contract, therefore, under the statute, was not void, but, as we have seen, was voidable at his option,—that is, it was enforceable until avoided by a disaffirmance; and it could be disaffirmed only in the manner provided by the statute."

An infant desiring to avoid a contract must signify his desire "not only by refraining from any act of affirmance, but by performing some positive act of disaffirmance, which is of such a character as to clearly show his intention not to be bound by his act." 22 Cyc. 554. See also 22 Cyc. 613.

In the case at bar it is conceded that the defendant was over the age of eighteen at the time he executed and delivered the note involved herein.

The following constitutes all the evidence offered by defendant in support of his contentions that he disaffirmed the contract and returned, or offered to return, the consideration received for the note. On direct examination, the defendant testified:

Q. Did you have any talk with Mr. King about these horses and this note you had that summer or fall before the note became due?

A. Yes, sir.

. . . . . . . . . . .

Q. That would be sometime in September?

A. Yes.

. . . . . . . . . . .

Q. What was the conversation?

A. I offered him his horses back. I had been working for him a year and I told him I would work a month free if he would give me my note back.

Q. What else was said?

A. He said he could not. He had put it up as collateral or something; that he did not have it then.

•   •   •   •   •   •   •   •   •   •   •   •

Q. Did you have conversation with the plaintiff about the note later on?

A. In the fall I did.

Q. Do you remember about what time? Was it in November or December, or when was it?

A. It was in October or November I should think; somewhere around there.

Q. What did you tell him?

A. I told him I could not pay the note and that I was not of age, and I offered to give him the horses back. He asked be where the horses were, and I told him up in the pasture, and I told him I would go up there and show him the horses if he wanted to see them, and he said he didn't want the horses.

Q. You say he said he didn't want them or did he say he would not take them?

A. I don't remember it. He said he did not want them and would not take them.

Q. He didn't take them?

A. No, sir.

•   •   •   •   •   •   •   •   •   •   •   •

Q. Did you offer to take him to the pasture where the horses were?

A. Yes.

Q. State as far as you can the whole conversation between you and Mr. Casement at that time?

A. He came into the barn up there, and he asked Mr. King if I was there, and he told him I was, and he said could be speak to me, and I was out in the back yard, and he called me in, and we talked. There was a little bedroom off the office. It was up about 6 feet, the wall was, and we went in there, Mr. Casement and I, and we sat down in the bed, and he asked me if I could pay any of that note, and I told him I could not. And he asked me where the horses were, and I told him they were up in the pasture, and he asked me if I still had them all, and I told him I had, and when he was going out then he said—I told

him I was not of age; I could not pay for the horses and he asked me if I could pay, any, and I said I could not pay any, and I would take him up to the pasture and turn the horses over to him, and he would not have to foreclose, and he said he didn't want them, or would not take them, I don't know which.

Q. How far were they?

A. About half a mile to the first edge of the pasture.

Q. You came of age on the 4th day of February, 1909?

A. Yes, sir.

On cross-examination the defendant testified in reference to these conversations:

Q. Then what did you say?

A. I told him I would turn the horses over and that he would not have to foreclose on them, and he said—I do not remember whether he said he wouldn't take the horses or didn't want the horses, and I told him I would go up to the pasture and show them to him, and he said he didn't care to see them.

.   .   .   .   .   .   .   .   .   .   .   .   .

Q. You cannot recall now and you were not sure and you are unable to testify whether he said he would not take the horses or whether he said the other thing?

A. Yes.

Pat King, called as a witness for the defendant, when referring to this conversation testified:

Q. Did you hear that conversation or part of it?

A. I heard part of it.

Q. Where were they when you heard?

A. They walked out of the bedroom into the office where the pump was. I heard Mr. Callaghan telling him that the horses were up there in the pasture and he could go up and get them; he would go up and show him the horses and turn them over to him.

.   .   .   .   .   .   .   .   .   .   .   .   .

Q. He said to Casement he could go out there in the pasture to get them?

A. Yes. He could have the horses, they were in the pasture.

Q. What did Mr. Casement say?

A. I do not remember he was saying anything. He kind of shook his head or something like that. I do not remember him saying anything.

Q. The young man (Callaghan) said, "they are in the pasture; You may go up there and take them;" and Mr. Casement didn't say anything?

A. I think he shook his head.

Plaintiff's version of the conversation is entirely different from that of defendant. Plaintiff claims that defendant made no offer to return the horses, but agreed to pay $80 by November 1st. It is conceded that defendant never returned the horses, and made no offer to do so other than the alleged offers mentioned in the foregoing testimony. And in his answer defendant alleges "that the offer of this defendant (to return the horses) was refused, . . . and that the said horses remained in the possession of this defendant," and that subsequently all of them died. Was there anything said by defendant or any positive act on his part which indicated an intent on his part to avoid the contract on the ground that he was a minor at the time he made it? We think not. When talking to King he recognized the validity of the contract, and sought to be released from its terms by making a new contract. When talking to the plaintiff, he also recognized the contract as subsisting and binding. He merely told the plaintiff that he could not pay the note, or pay anything on it; that the horses were in the pasture, and that defendant would go there and show plaintiff the horses if he wanted to see them; that defendant was not of age; that he could not pay anything on the note; that he would take plaintiff up to the pasture and turn the horses over to him so that he would not have to foreclose. After this conversation he continued to retain possession of the horses. Nothing further was ever said or done by defendant to indicate any intent or desire on his part to avoid or disaffirm the contract. In our opinion defendant's testimony fails to show any notice of disaffirmance, or any positive act on his part of such character as to manifest an intent on his part to disaffirm the contract.

The judgment appealed from is therefore reversed, and the court below is directed to enter judgment in favor of the plaintiff.