# IN THE MATTER OF THE GUARDIANSHIP OF MELVIN FRANCIS CAMPBELL.

## MELVIN FRANCIS CAMPBELL, Respondent, v. MIKE J. COSTELLO, Appellant.

(215 N. W. 913.)

**Courts — appeal from county court may be restricted to specific direction or award.**

1. On an appeal from a decision or decree of the county court exercising probate jurisdiction, appellant under the provisions of § 8606, Comp. Laws 1913, may restrict the appeal to any specific direction or award contained in the decree or decision, if the issue upon which the same depends can be separately tried and determined without prejudice to any other part of the decree.

**Minors — power to contract — disaffirmance.**

2. Under the statutes of this state, a minor over the age of eighteen may enter into any contract, subject to his power of disaffirmance, but he cannot give a delegation of power.

**Minors — right to disaffirm contract fixed by statute.**

3. The statutes of this state fix the right of a minor to disaffirm his contract.

**Minors — when contract of minor may be disaffirmed.**

4. Except as to contracts to pay the reasonable value of things necessary for his, or the support of his, family, entered into by him when not under the care of a parent or guardian able to provide for him or them, "the contract of a minor if made while he is under the age of eighteen, may be disaffirmed by the minor himself, either before his majority or within one year's time afterward; or in case of his death within that period by his heirs or personal representatives; and if the contract is made by the minor while he is over the age of eighteen, it may be disaffirmed in like manner upon restoring the consideration to the party from whom it was received or paying its equivalent with interest."

---

Annotation.—(2) Appointment of agent and act of agent thereunder, as void or voidable, see annotation in 31 A.L.R. 1001; 14 R. C. L. 220; 5 R. C. L. Supp. 755.

(4, 5) As to right of infant to disaffirm contract or conveyance before maturity, see annotation in 51 L.R.A.(N.S.) 28; 14 R. C. L. 234; 3 R. C. L. Supp. 199; 5 R. C. L. Supp. 756; 6 R. C. L. Supp. 805, 806.

**Minors — right to disaffirm, personal privilege.**

5. Under the statutes of this state, the right of one to disaffirm his contract made while a minor, is a personal privilege of which he alone, if living and under no mental or physical disability can take advantage.

**Guardian and ward — burden on guardian to prove payments on account of ward.**

6. The burden of proof as to the fact of payment, and also as to the necessity and correctness of the demand paid, is upon the guardian of a minor who claims credit in his account as guardian for the amount paid, where the validity of the demand so paid is disputed.

**Guardian and ward — guardian after two years estopped to deny appointment or acts done as such.**

7. The undisputed evidence shows that one C accepted the appointment by the county court as guardian of a minor; that he qualified as such and undertook the duties of that relationship, and for two years and upwards under color of his office collected and received and paid out large sums of money; that he made his account as such guardian showing the moneys collected and paid out and urged the allowance of said account. Under these circumstances, both on reason and authority he will be estopped from denying the legality of the appointment or of his acts done in virtue of that appointment.

**Appeal and error — on appeal one must be consistent with attitude at trial.**

8. Where appellant acts upon a particular theory in the trial court, he will not be permitted upon appeal to shift his position and assume an attitude wholly inconsistent with that taken by him in the court below.

**Guardian and ward — district court's judgment — affects matters specified in appellant's notice.**

9. Where, upon appeal from a decision of a county court allowing a guardian's account, the appellant restricts the issues to items of the account specified in his notice, the judgment of the district court should affect the decision or decree appealed from only as to matters specified which are modified or determined adversely to the decision thereon of the county court.

Opinion filed September 27, 1927. Rehearing denied November 26, 1927.

Appeal and Error, 4 C. J. § 2609 p. 701 n. 49. Courts, 15 C. J. § 443 p. 1024 n. 6. Estoppel, 21 C. J. § 243 p. 1237 n. 56. Executors and Administrators, 24 C. J. § 2472 p. 1019 n. 90. Guardian and Ward, 28 C. J. § 108 p. 1095 n. 93; § 384 p. 1221 n. 15, 16; § 396 p. 1228 n. 87 New; § 401 p. 1232 n. 56 New. Infants, 31 C. J. § 65 p. 1018 n. 17; § 70 p. 1020 n. 56; § 148 p. 1058 n. 57; § 163 p. 1067 n. 16; § 164 p. 1068 n. 29; 166 p. 1071 n. 72.

Appeal from District Court of Pierce County, *Englert,* Special J. Modified.

*Traynor & Traynor,* for appellant.

"The marriage of a minor does not necessarily emancipate him from all disabilities of his infancy. To what extent such disabilities are removed depends upon the statutes and the construction thereof." 31 C. J. 1008.

"A guardian should pay all just debts due the ward out of the estate in his hands." 28 C. J. 1149, § 251; Re Bates, 174 Pac. 743; Caldwell v. Young, 21 Tex. 800.

The consent or acquiescence of the beneficiaries may validate a mortgage executed by the personal representative without authority. 24 C. J. 195; Talliferro v. Thornton, 80 S. W. 1097.

"A direction to raise a sum gross impliedly authorizes a mortgage even though the rents and profits are alone specified." Underhill, Trusts & Trustees, 7th ed. 337.

"Where the guardian acts under judicial sanction, what he does in good faith receives the strongest protection." McElheny v. Musick, 63 Ill. 329.

"Where a guardian has received the ward's personal estate from the administrator of the ward's father, he is entitled to credit for payment of a debt justly due from the father's estate." 28 C. J. 252; Foreman v. Murray, 7 Leigh, 412.

"No guardian can be an infallible judge of what is beneficial to his ward; and to make him liable in ordinary cases beyond limits of good faith and a sound discretion would be intolerable." Schouler, Dom. Rel. § 365; Maclay v. Equitable Soc. 152 U. S. 499; Albert's Appeal, 128 Pa. 613.

*Paul Campbell,* for respondent.

A guardian has no right to possession or management of a fund. Halliman v. Hearst (Cal.) 66 Pac. 17, 55 L.R.A. 260.

A contingent estate of a ward will not authorize appointment of a guardian. 28 C. J. 1069, note 86, sub. h.

A contingent estate of a ward cannot be sold. 28 C. J. 1171.

Prospective property of the ward cannot be mortgaged. 28 C. J. 1206.

Moneys improperly paid to a guardian are not proper in his account. 28 C. J. 1231.

The guardian's bond is not liable for property received after majority or for property received that does not belong to the ward. 28 C. J. 1288.

The guardian cannot by contract bind either his ward or the ward's estate. 28 C. J. 1165; Shepard v. Hanson, 9 N. D. 249.

It is his duty to keep his ward employed (particularly when there is no estate or income). 28 C. J. 1122.

He (the guardian) cannot make a valid contract with his ward before majority. 28 C. J. 1157.

One under guardianship has no capacity to contract. 28 C. J. 1157.

Pugh, Dist. J. Seth H. Campbell, father of plaintiff, died, testate, August 15th, 1914, leaving surviving him Bridget Campbell, widow, Melvin Francis Campbell, his son, and two step-daughters, Mrs. Jessie Waldo and Mrs. Agnes Ullman, children of Bridget Campbell by a former marriage. The last will and testament of said Seth H. Campbell was duly admitted to probate in Pierce county, North Dakota, December 13th, 1915. The estate consisted of a half section of land and certain personal property, free from incumbrance, located in Pierce county. By the terms of the will, all personal property was bequeathed to Bridget Campbell, the wife of the testator, and also, during her lifetime, the possession, control, management, use, income and profits of the real estate. The will further provided: "Upon the death of my said wife, I give, devise and bequeath all of the said described real estate and such other real estate of which I may die possessed to my son Melvin Francis Campbell, provided he is then of the age of twenty-seven (27) years, otherwise the land is to be held in trust as hereinafter set out. Third. In case my wife, Bridget Campbell, die before I do, or in case that she die after me and before my son Melvin Francis Campbell, now 12 years old, become of the age of twenty-seven (27) years, then I give, devise and bequeath all my said real estate to Conrad Ullman of Montana for him to hold in trust for my said son Melvin Francis Campbell, until he shall reach the age of twenty-seven (27) years, at which time all of said real estate shall go to my son absolutely."

Melvin was married November 10th, 1920, and his wife and two

children, issue of the marriage, are living with him. He attained the age of 21 years February 22nd, 1923. Bridget Campbell, his mother, died intestate at Minneapolis, Minnesota, December 23rd, 1920. Upon petition of Melvin, Emil Lewiston was appointed administrator of her estate and letters of administration were issued to him March 18, 1921. No other or further proceedings were had in said estate until on or about January 8th, 1925, when the administrator filed an inventory consisting of personal property valued at $862.00. On or about February 3rd, 1921, Ullman, the trustee named in the will, appointed defendant, Costello, as agent to act for him with reference to the trust imposed by the will, and on March 16th, 1921, the county court appointed him general guardian of Melvin. At that time Melvin had in his possession the personal property which had belonged to his mother at the time of her death, and also a piano and Ford touring car of which he claimed to be the owner. Shortly after his appointment as guardian, defendant petitioned the county court for, and was granted, license to mortgage the real estate as security for a loan of $1,700, extending for a period of five years, which loan was effected and the mortgage executed and filed of record against the land. Defendant continued to act as the general guardian of Melvin, collected and received money from the crops raised on the land and from the loan aforesaid and disbursed the same, making a final account to the county court April 19th, 1924. A hearing was had upon said account before the county court, which court found that the defendant had received from all sources, including the proceeds of the $1,700 loan the sum of $4,202.85; and of the disbursements charged against the estate and for which defendant had taken credit in his account, the court allowed items aggregating the sum of $4,128.37, and in addition thereto an allowance of fees for himself and attorney. From the allowance made by the county court, plaintiff appealed to the district court, specifying as error the allowance of the particular items of the account to which he urged objection.

Upon trial the district court found that defendant had collected and received and was chargeable with $4,202.35; that he had paid out and expended in his capacity as agent for the trustee, to whom and for which he should be held to account, the sum of $2,324.63; and that the remainder of $1,877.72 was received by the defendant in his capacity as guardian, of which sum the court found he had expended as guardian

in the administration of the guardianship estate $965.06, leaving a balance in his hands of $912.66. The court further found that this balance of $912.66 was also the property of the trustee to whom and for which defendant should account. Judgment was entered on these findings accordingly. From that judgment defendant appeals to this court and demands a trial de novo.

The plaintiff elected to confine the issues upon appeal to those specific awards of credit allowed defendant by the county court which are specified in his notice of appeal. Comp. Laws 1913, §§ 8606, 8607. Having so restricted the appeal, he impliedly admitted the correctness of all other items of the account as allowed by the county court. The trial court considered all items of said account which fairly came within the plaintiff's specifications of error as set forth in his notice. An examination of the notice of appeal and of the record in the case, shows that eleven items aggregating $912.59 are challenged. The district court found that these items were not proper charges against the estate of the minor and struck them from the account. These items will now be considered.

Upon the death of Bridget Campbell her daughter, Jessie Waldo, requested Melvin to send money to her at Minneapolis to assist in defraying the funeral expenses. Melvin saw and talked with defendant and Harold B. Nelson, who had acted as attorney for his mother, with reference to raising the money requested. One hundred dollars was borrowed from the Security Bank of Rugby, upon the note of Melvin, Nelson and defendant, and the money was sent to Mrs. Waldo. This transaction occurred December 24, 1920. The record is not clear whether the bank paid the money to Melvin or whether it transmitted the money direct to Mrs. Waldo. The evidence, however, admits of no conclusion other than that the contract was Melvin's contract, entered into upon his express request, and that Nelson and Costello were sureties only. Melvin knew that he, personally, had borrowed the money, that he had given the note therefor, and that Nelson and defendant had signed the note to enable him to obtain the loan. The record is plain that he did not by word or act in any manner whatever, indicate to any of the parties to the note, his disaffirmance of the transaction, until, possibly, the hearing in the county court, April 19th, 1924; nor is there any proof that plaintiff then repudiated or disaffirmed said con-

56 N. Dak.—5.

tract. The notice of appeal, dated October 10th, 1924, served October 23rd, 1924, a year and eight months after Melvin had attained his majority, is the first and only fact of record in this case, tending to show a disaffirmance. As we understand the argument of counsel upon his brief, and orally before the court, he insists that the contract was void when made, or if not void that the disaffirmance was timely. It is clear, under the statutes of this state, the contract is not void, but voidable. Comp. Laws 1913, § 4339. It was enforceable unless disaffirmed within the time and in the manner provided by statute. Luce v. Jestrab, 12 N. D. 548, 97 N. W. 848. A minor over eighteen years of age, may enter into any contract, subject only to his power of disaffirmance. Comp. Laws 1913, § 4339. Although he cannot give a delegation of power. Comp. Laws 1913, § 4338. Except as to contracts to pay the reasonable value of things necessary for his, or the support of his family, entered into by him when not under the care of a parent or guardian able to provide for him or them (Comp. Laws 1913, § 4341), "the contract of a minor if made while he is under the age of eighteen, may be disaffirmed by the minor himself, either before his majority or within one year's time afterward; or in case of his death within that period, by his heirs or personal representatives; and if the contract is made by the minor while he is over the age of eighteen, it may be disaffirmed in like manner upon restoring the consideration to the party from whom it was received, or paying its equivalent with interest." Comp. Laws 1913, § 4340; Casement v. Callaghan, 35 N. D. 27, 159 N. W. 77; Luce v. Jestrab, supra; Decker v. Hickman, 116 Okla. 65, 243 Pac. 516; Whyte v. Rosencrantz, 123 Cal. 634, 69 Am. St. Rep. 90, 56 Pac. 436; Craig v. Van Bebber, 100 Mo. 584, 13 S. W. 906, 18 Am. St. Rep. 569, and Freeman's exhaustive note thereto. The right to disaffirm his contract is a personal privilege (Comp. Laws 1913, § 4340) of which the infant alone if living can take advantage (31 C. J. 1018, 1066). Desiring to avoid the contract. he must not only refrain from any act of affirmance, but by some positive act of disaffirmance clearly show an intention not to be bound. 31 C. J. 1020; Casement v. Callaghan, 35 N. D. 27, 159 N. W. 77. Plaintiff was over the age of eighteen years and not under guardianship when. the loan was made. Therefore, two conditions precedent to the disaffirmance thereof, are imposed by law; that is, he may disaffirm before:

his majority or within one year after attaining his majority, and in addition to acting within the time specified he must restore. Unless he observes these conditions any attempted disaffirmance would be ineffectual. It is undisputed neither of the conditions imposed by statute were observed by the plaintiff. The item of $104.78, the amount of said note with interest, should be allowed as a credit to defendant in his account. Comp. Laws 1913, § 8891.

A similar situation arises with reference to the claim for credit made by defendant for $79.70 paid by him to Merchants Bank of Rugby, allowed by the county court and disallowed by the district court. The uncontroverted testimony appears to show that in the fall of 1922, plaintiff purchased certain personal property, consisting of farm machinery and horses, at the price of three hundred dollars. For the purpose of making payment therefor, he borrowed from the Merchants Bank, and gave his note to the bank due the fall of 1923, which note the defendant also signed. During the year 1923, having become of age, plaintiff farmed the land mentioned in the will. The defendant collected and received the proceeds of the farm for that year, which proceeds of said crop are included in and form a part of his account. From these proceeds defendant paid the note then amounting to $79.70. Melvin did not disaffirm this contract by word or act or in any manner whatever, unless the appeal taken by him from the decision of the county court, upwards of a year and eight months after he became of the age of twenty-one years, may be taken as a disaffirmance. What we have said in the preceding paragraph applies with equal force to this item. Consequently, the defendant is entitled to the credit.

The loan for $1,700 was obtained from Jacob Schabert on or about May 16th, 1921. The plaintiff contends that the loan was made without authority in law and commenced an action against Schabert, after becoming of age, wherein he seeks to have the validity of that loan and mortgage determined, and if invalid to have the mortgage cancelled of record. This action was pending at the time of the trial in district court. The question of the validity of the loan and mortgage is not in issue in this case and we refrain from expressing any opinion with reference thereto. However, the defendant paid two instalments of interest on the loan and took credit therefor in his account. These items were disallowed by the trial court, apparently on the ground that

the validity of this loan and mortgage then was the subject of litigation. The general rule of law is that until the mortgage is found to be invalid and is set aside, the guardian may make payments of the debt and interest. 28 C. J. 1207. If, however, the county court was manifestly without jurisdiction to grant an order of license to mortgage the real estate, or if for any other reason it be determined that the loan and mortgage were invalid and not a just charge against the estate of the minor, and if by the exercise of reasonable diligence the guardian would have discovered that the loan and mortgage were not proper charges against the minor estate, the rule, in that event, should not prevail, for the law requires the exercise of good faith on the part of the guardian in the administration of the ward's estate. It is our opinion these credits should be withheld until the final determination of plaintiff's action against the mortgagee.

Defendant presented a receipt evidencing payment of $274.63 to one O. Amberson, a merchant, and took credit for that amount in his account. This item was allowed by the county court, but the district court found it to be an improper charge against the minor and disallowed the same. It appears from the voucher presented by the defendant that this money was paid in settlement of a note given by Bridget Campbell December 3rd, 1917 and an account for merchandise sold to her by O. Amberson. The following excerpt from defendant's testimony exhibits not only the impropriety of allowing defendant credit for this item but also his lack of diligence in protecting interests of his ward: "Q. The next item is the Amberson account, note and balance of book account and interest $274.63. A. It is. Q. How much of that was Melvin's and how much of that was the mother's? A. I don't know. Q. You can't tell? A. No. Q. You didn't care at the time you paid out this money? A. No, I didn't. Q. As far as you know the voucher speaks correctly? A. I saw the items of the account of that and I looked it over as far as I could to see it was for living expenses and when I saw it was it didn't make no difference to me. Q. This to the extent of $274.63 was really an account against the mother, Bridget Campbell? A. Yes, sir. Q. For living expenses of her in her lifetime? A. Her and Melvin together. Q. You know it was her's and Melvin's? A. I know her and Melvin were living together."

The burden of proof not only as to the fact of payment but also as

to the necessity and correctness of the demand, is upon the defendant upon credits claimed the validity of which are disputed. 24 C. J. 1018, 28 C. J. 1221. It is obvious the proof wholly fails to show that this claim was a valid demand against the minor.

A note given April 25th, 1921 by the minor to Security Bank of Rugby, was paid by defendant September 9th, 1921, and he asks that he be credited in the sum of $54.00, the amount of the note with interest. In support of his claim defendant submitted receipt for that amount and attached thereto three notes, one in the sum of $50.00 presumably executed by Melvin and his mother, one for $100.00 to which his mother's name is attached by mark, and the note which defendant paid. The minor insists there was no consideration for the note executed by him, and that there is no proof whatever that his mother executed either of the notes bearing her name. These contentions appear to be borne out by the record. The disputed note appears to be a balance remaining unpaid on the two other notes mentioned, for, on the back of the $100 note appears a credit on the principal of $68.00 as of June 18, 1921 and of $4.86 interest, and the further notation: "Balance due on principal $52.00 new note Melvin." The defendant was not in possession of any knowledge concerning the consideration supporting the note which he paid and for which he seeks credit. The record is wholly silent as to the execution of the former notes by Mrs. Campbell. Plaintiff testified he signed the note in question upon the representation by defendant and his attorney that he was obliged to pay all of his mother's indebtedness before the guardianship matters could be closed, which representation he believed to be true. The defendant has failed to sustain the burden resting upon him to prove that this note is a valid charge against the minor, and the disallowance of the item is accordingly sustained.

During April, 1923, after Melvin had attained his majority, Ullman as trustee and defendant, sought to make a loan of $5,500 and as security therefor to mortgage the real estate mentioned in the will. Defendant paid certain fees and expenses in connection therewith in the sum of $15, for which he has taken credit in his account. The transaction referred to, having taken place after Melvin had reached his majority, the expenses incurred in connection with those proceedings

could hardly be considered as legitimately chargeable in the account of the guardian. The finding of the trial court thereon is affirmed.

Defendant paid Theodore Schabert $56.00 admittedly in settlement of a note of Bridget Campbell, given by her for the purchase of a team of horses; he paid C. F. Ullman, the trustee named in the will, $82.25 in payment of a note and interest given by Bridget Campbell for a loan of money to her by Ullman; and Campion-Campion & Sons the sum of $19.33 for settlement of an open account for merchandise which Bridget Campbell owed that firm. The finding of the trial court that these items are not proper charges against the minor, has abundant support in the evidence.

The county court allowed the guardian $175 for his personal services, $150 for the services of his attorney and $28.71 for certain expenses incurred. Plaintiff's appeal from the county court includes these items. Upon trial of this case the district court reversed the allowance of the county court.

The plaintiff contends that the guardianship was wholly unnecessary and served no useful purpose; that the ward was married at the time of the appointment; that the guardian therefore had no control over the person of the ward; that the ward had no property subject to the administration of the guardian; that in any event the guardian was not diligent in protecting the minor's interests; and that his estate was not conserved through the administration of the defendant. For these reasons he insists that no allowance should be made for services or expenses of the guardian or attorney. The plaintiff, however, does not contend that the appointment was without authority of law and therefore null and void. The defendant on this appeal for the first time asserts that all proceedings had relative to the appointment of defendant as guardian were without jurisdiction and were and are null and void. That the district court acquired no jurisdiction on appeal and that this court is without jurisdiction to hear and determine this appeal. He therefore urges the dismissal of all proceedings had herein, and that the parties be relegated to such other remedies as they may be advised will secure them their rights. The record is clear that at no stage of any of the proceedings had herein, either before the county court when the defendant was urging the allowance of his final account, or after appeal, at the trial held in the district court, was this question

raised; but it does affirmatively appear throughout all of these proceedings that the defendant proceeded on the theory that he was the legally appointed guardian of the minor. He cannot now, for the first time, be permitted to shift his position and assume an attitude wholly inconsistent with that taken by him in the courts below, so as to raise the question of the legality of his appointment and of his subsequent acts in pursuance of that appointment. Lindberg v. Burton, 41 N. D. 587, 171 N. W. 616. We deem it unnecessary to pass upon the interesting question of the legality of the appointment, and refrain from so doing; for, in the light of the undisputed evidence in the case, which shows that the defendant accepted the appointment, qualified, and undertook the duties of that relationship, that for a period of two years and upwards under color of office he collected and received and paid out large sums of money in which the minor concededly had some interest, that he made his accounts as guardian and urged the allowance thereof, both on reason and authority he will be estopped from denying the legality of the appointment or of his acts done in virtue of such appointment. 28 C. J. 1095, 1210; 21 C. J. 1237. His claim for compensation is wholly at war with the assertion that he was not guardian.

It is uncontroverted that the only personal property owned by Melvin at the time of the appointment of the defendant as guardian was a Ford car and possibly a piano, both of which however are claimed by the administrator of his mother's estate, and neither of which was taken into custody by the defendant nor inventoried as assets of the ward's estate. The money received and disbursed by defendant was derived solely from the farm which, by the terms of the will was devised to Conrad Ullman, to be held by him in trust, and who, from the rents and profits, was directed to furnish to Melvin the necessities of life. The trial judge in his memorandum opinion sums the matter up in language amply borne out by the record, as follows: "This case presents an unusual situation. The estate left by the minor's father was and is held by a trustee named in the will. The guardian assumed jurisdiction and control over the estate without authority of the trustee. The ward had no property except such as was left by the will and within the jurisdiction of the probate court. The guardian handled all the money that paid off the accounts here objected to. The minor did not make the contract, except as it was made for him through the guardian.

The guardian assumed the authority to handle the estate left to be handled by the trustee and did so without authority from the will or the county court or the trustee. The money paid out by the guardian did not belong to the minor, but was part of the estate left by the will."

In this connection defendant testified:

"Q. You understood that ·in this matter you were acting in two capacities, one as agent and the other as guardian of this minor? A. Yes, sir. Q. And did you understand that this ward had any property that was not in the trusteeship that you handled as agent? A. Yes, sir. Q. What property did you understand he had? A. Some property his mother left. Q. He did not have that? A. Yes, sir. Q. You know that an inventory was not filed till after this trouble started? A. That does not make any difference. He stepped in and took the personal property his mother had. Q. Did you understand you were handling that? A. No. Q. You understood that was in the hands of the administrator who was looking after all of the Bridget Campbell estate? A. Yes, sir. Q. As a matter of fact all the property you had anything to do with was this property Conrad Ullman held in trust? A. Yes, sir."

The trial court found "that the services of the said guardian and his attorney herein and in fact the entire guardianship proceedings were wholly unnecessary and surplusage and of no value." It will be borne in mind that at the time of the trial of this case in district court there was then pending in that court an action wherein Ullman is the plaintiff and Melvin is the defendant, having for its object the adjudication of matters relative to the said trust.

As we view this case, the defendant did not exhibit that zeal in the protection of his ward's interests which one who undertakes the administration of a high trust is bound to exert, for the uncontradicted evidence discloses that he recklessly paid baseless claims, including those we have considered in this opinion and others which the county court found to be without merit, and finally urged that credit be given· him therefor in his account. It also appears from the evidence that the trustee probably will claim compensation for practically the same work as was performed by defendant, thereby subjecting the plaintiff to the hazard of paying double compensation, should defendant's claim be allowed. The trial court correctly held that in these proceedings

defendant should not be allowed compensation either for himself or his attorney.

A complicated distinction seems to be drawn in the findings of the trial court, prepared by counsel, by which certain of the funds received by the defendant and reported by him in his account as guardian, are referred to as trust funds, while other funds concededly derived from the same source, to wit: the farm land, are considered as guardianship funds. Defendant represents in his final account that he received $4,202.85 as guardian. He credited himself with certain items of which an aggregate of $4,128.37, in addition to compensation for himself and lawyer, was allowed by the county court. The district court reduced the total credit to which it found the defendant entitled to the extent of the sum of the items we have herein discussed, aggregating $912.59. Of these items we have restored to the credit of defendant the sum of $184.48. Thus the total credit to which defendant is entitled is $3,400.26, leaving a balance in his hands of $802.59. The plaintiff having elected upon appeal to restrict the issues to those matters specified in his notice, the judgment of the district court should affect the decision or decree appealed from only as to matters specified which are modified or determined adversely to the decision thereon of the county court. Comp. Laws 1913, § 8621. The judgment should be simply that the final decision of the county court, in so far as that decision allowed as credits in the defendant's account the items discussed in this opinion wherein we have affirmed the finding of the district court, be reversed; but that as to all other items of said account, it be affirmed; and that the county court be directed to enter its decree in allowance of defendant's final account accordingly.

This case will therefore be remanded to the district court with instructions to modify the judgment of that court consistent with this opinion, and as so modified the judgment will be affirmed. No costs will be awarded either party on this appeal.

BIRDZELL, Ch. J., and BURKE, CHRISTIANSON, and NUESSLE, JJ., concur.

BURR, J., being disqualified, did not participate; Honorable THOMAS H. PUGH, Judge of the Sixth Judicial District, sitting in his stead.