[No. 3842. Decided September 13, 1901.]

SHELTON LOGGING COMPANY, *Appellant,* v. JOHN W. GOS-
SER *et ux., Respondents.*

TIDE LANDS — SALE BY STATE — CONSTRUCTION OF CONTRACT — IN-
CLUSION OF LANDS WITHIN GOVERNMENT SURVEY.

A purchaser from the state of tide lands described as lying in
front of, adjacent to, or abutting on a lot as surveyed and
platted by the general government does not thereby acquire title
to tide lands within the meandered calls of said lot, but only in
front of, or abutting on, or adjacent thereto.

QUIETING TITLE — INQUIRY INTO PLAINTIFF'S TITLE.

Although possession of plaintiff is sufficient under the statute
to warrant an action to quiet title, yet where, in addition to pos-
session, he shows the title under which such possession is
claimed, the court is then required to pass upon the validity of
his title, and thus on the lawfulness of his possession.

SAME — WHEN DEFENDANT'S TITLE IMMATERIAL.

Where, in an action to quiet title, plaintiff has failed to es-
tablish his own title, it is unnecessary to inquire into the validity
of defendant's title.

Appeal from Superior Court, Mason County.—Hon.
CHARLES W. HODGDON, Judge. Affirmed.

*Haight & Owings* and *S. P. Richardson,* for appellant.

*Troy & Falknor,* for respondents.

The opinion of the court was delivered by

WHITE, J.—The evidence in this case is not brought up
with the record. The facts appear from the pleadings
and findings. On the 12th of December, 1896, the state
of Washington contracted to sell to Ellis & Reed tide lands
described as follows:

"All the tide lands lying in front of, adjacent to, or abutting on lots numbered 2 and 3, section 2, township 20 north, of range 3 west, Willamette meridian."

It appears by the findings that the plat of the survey of lot 2 returned by the surveyor general to the general land office bounds lot 2 on the water side as follows:

"Beginning at the meander corner to sections 2 and 35 on the north boundary of township 20 N., R. 3 west, W. M., which corner is 5.00 chs. west of standard corner, to sections 35 and 36, T. 21 N., R. 3 west; thence with meanders in section 2, S., 49½ deg. E., 2.60 chs.; S., 72 deg. E., 7.40 chs.; N., 77 deg. E., 3.40 chs.; S., 25 deg. E., 4.39 chs.; S., 51 deg. W., 2.46 chs.; S., 49 deg. W., 3.14 chs.; S., 37 deg. W., 8.05 chs.; S., 49 deg. W., 3.39 chs.; S., 40 deg. W., 3.95 chs."

This contract, by assignment, became the property of the appellant. The assignors of the appellant, under said contract, entered into possession of the property contracted to be sold about the time the contract was made, and the appellant and its assignors have ever since used the same for booming purposes in connection with logging operations. Part of such booming works has been upon that portion of the land shown by the shaded surface between lines 3—4, 4—7, 7—8, and 8—3 in the annexed plat. Over this the tide regularly ebbs and flows. The following is a plat of said lot 2:

The black lines represent the boundaries of lot 2 according to the United States government field notes. The shaded part over which the tide ebbs and flows has been used by the respondents at low tide to haul hay over, and for the purpose of driving their stock and cattle over and upon from their barn and stable on the south side of Campbell creek to the north side of said creek, and they so used the same prior to the building of the boom. The building and maintenance of the boom prevent the free

use of the land by the respondents. On the 20th of January, 1892, the United States by patent granted said lot 2, section 2, township 20 N., of range 3 W., W. M., to John W. Gosser, one of the respondents. That part of the meander .line, 1—8 on the plat, 'is practically along the line of vegetation, and is the line of mean high-tide. The line 8—3 on the plat is the mean high-tide line and the line of vegetation. The space as shown in the plat included between lines 1—2, 2—3, 3—8, 8—1, has grass growing thereon, and for several years hay has been cut and cured thereon. The same has been used for pasturage. Ordinary high tide does not overflow said part, and this part is not tide land. The line 6—7 in the plat is practically along the line of vegetation, and is the mean high-tide line. The line 7—4 is the mean high-tide line and line of vegetation. That part of the area south and east of the line 6—7—4 is never covered by high tide. The area between lines 3—4, 4—7, 7—8, and 8—3 is overflowed at high tide. At low tide it is bare, except where Campbell creek flows through. Where the creek runs it has a depth at low tide of three or four inches, and is about twenty feet wide. Lines 6—7—8—1 are the meander lines of said lot 2, section 2, township 20 N., range 3 W., W. M. The respondents have attempted to prevent appellant from using said tract designated on the plat 3—4, 4—7, 7—8, 8—3, for booming purposes, and have threatened to prevent its use by appellant in the future for such purposes. The court found that the appellant had no right, title, or interest in and to any of the lands above and on the shore side of the said meander line in front of said lot 2. The court further found that appellant's title in said tide lands ends at said meander line; that the tide lands of the appellant do not extend within

9—26 WASH.

or above on the shore side of said meander line. Judgment was entered dismissing the action. From the findings it appears that the court held that this was an action to quiet title to the land above and on the shore side of said meander line, and, inasmuch as the appellant had no title to such lands, the action was dismissed.

There are twelve assignments of error, but they may all be resolved into one proposition: Had the appellant any title to land within the calls of lot 2, so as to be entitled to a decree quieting its title? This action, in the main, is clearly one to quiet title. The injunctive relief prayed for is a mere incident. In the absence of a statute, the general rule is that one must be in possession of the premises before he can successfully invoke the aid of equity to determine his estate. Section 5521, Bal. Code, is but a reaffirmance of this rule. This section provides that "any person in possession . . . of real property . . . may maintain a civil action against any person . . . claiming an interest in said real property, . . . or any right thereto adverse to him, . . . for the purpose of determining such claim, estate or interest. . . ." Section 5500, Bal. Code, extends the equitable rule to one out of possession. For a person successfully to invoke the interposition of equity, two things must be established: (1) The validity of his own title in law or equity; (2) the invalidity of his opponent's. The first inquiry, then, is, has the appellant established any title? We do not think that the contract between the state of Washington and Ellis & Reed gave to the appellant any title, equitable or legal, to the tide lands within the meander line of lot 2, section 2, township 20 N., range 3 W., W. M.. The contract with the state referred to lot 2, section 2, township 20 N., range 3 W., W.

M., as a legal subdivision of the public lands of the United States, in the same manner that one might refer to any other well-known monument in describing land. "All tide land lying in front of, adjacent to, or abutting on lot numbered 2, section 2, township 20 north, of range 3 west of the Willamette meridian," refers to the lot as surveyed and platted by the government, and does not include a grant or sale of tide lands within the calls of said lot 2, but only in front of, or abutting on, or adjacent to said lot. It may be that, notwithstanding the patent to John W. Gosser purports to grant to him said lot 2, he does not take under such grant tide lands within the calls of lot 2, but takes only to the water course, as contended by appellant. But that in no way aids the contract under which the appellant claims. If we construe the complaint as alleging that the appellant had title to and was in possession of the tide lands within lot 2, designated on the plat by the figures 3—4, 4—7, 7—8, 8—3, the action must likewise fail, because the only title the appellant shows is that under the contract between Ellis & Reed and the state, and we hold that does not include tide lands within lot 2. The answer of the respondents averred that the possession of the appellant of land within lot 2 was by and through the permission of the respondents, and under an agreement made by the respondents with the appellant. This is denied. On this issue the findings are silent. The findings are that a part of appellant's booming works has been upon that portion of land over which the tide ebbs and flows, shown on the plat between the lines 3—4, 4—7, 7—8, and 8—3, and that defendants have attempted to prevent plaintiff from using said tract for booming purposes, and have threatened to prevent its use by plaintiff in the future for said purposes. There is nothing incon-

sistent in the findings in this respect with the allegation of the answer that such possession was under the respondents. It may be that the respondents have been guilty of a breach of their contract, and are liable to an action for damages, or the appellant may be entitled to an injunction to restrain interference with the booms on this part of the land. There is nothing in the findings from which such facts can be determined, and the evidence is not before us. We understand the rule to be that, in the absence of any showing to the contrary, possession as a matter of evidence *prima facie* establishes title. *Horn v. Jones,* 28 Cal. 195; *McGovern v. Mowry,* 91 Cal. 383 (27 Pac. 746); *Steele v. Fish,* 2 Minn. 153; *Wilder v. St. Paul,* 12 Minn. 192. When, however, it is shown, in addition to possession, what the title is under which such possession is claimed, the court is then required to pass upon the question as to whether or not the one so claiming has title, and incidentally as to the lawfulness of his possession. The title claimed by the plaintiff is through a contract with the state. Under it we have held that the appellant had no title to the land within the calls of lot 2. His possession then becomes immaterial as evidence of title. It may be that all the appellant was required to do in order to make out a *prima facie* case was to establish possession. Here, however, the appellant has gone further than the mere allegation of possession. It has deraigned its title by apt averments, and relies on possession by virtue of the ownership of such title; and from these averments the court is able to determine that it is a mere trespasser on tide land within lot 2, as it has no title to the same. Appellant's title having failed, it is unnecessary to inquire whether or not the respondents had title to any portion, and, if so, what, within the meander lines of said lot 2.

The judgment of the court below is therefore affirmed.

REAVIS, C. J., and FULLERTON, DUNBAR, ANDERS, MOUNT, and HADLEY, JJ., concur.