## COCHRAN TIMBER CO. v. FISHER.

1. DEEDS—FRAUD—QUITCLAIM—QUIETING TITLE.

Complainant, a lumbering corporation, filed its bill to remove a cloud from its title arising out of defendant's claim to the land by subsequent quitclaim from complainant's grantor. Defendant charged in his cross-bill that the deed to complainant was procured from one E. A., who was intoxicated when she signed the instrument, and who was not in a state of mind to understandingly execute a conveyance; also that she was fraudulently misled or deceived in relation to the amount of taxes and tax interests that were outstanding. Held, that the defendant could not question the validity of the deed to complainant on the ground of fraud; that the right to complain of any fraud was nonassignable and that defendant took title with full knowledge of the situation.

2. SAME—ASSIGNMENT—FRAUD—CHOSE IN ACTION.

The assignee of a cause of action for fraud cannot enforce his right or claim in equity, as the right to bring suit to set aside a conveyance for fraud is not assignable, but is a personal right.

3. SAME—VOIDABLE CONVEYANCE.

The conveyance was *prima facie* valid and, unless it was

disaffirmed by the grantor after she was restored to her right mind, became binding by ratification.

4. SAME.

And the grantee might, before disaffirmance, convey to a *bona fide* purchaser, so as to transfer a good title. Having parted with the legal title, the owner retained only a right to sue to set aside her deed, which did not pass to defendant by her quitclaim.

5. SAME—EQUITY—CLEAN HANDS.

The power to grant complete relief incident to the court of equity does not extend to third persons, not parties to the proceeding, nor was defendant entitled to prevail on the ground that complainant did not come into court with clean hands, in relation to said third person.

Appeal from Baraga; O'Brien, J. Submitted January 12, 1916. (Docket No. 109.) Decided March 30, 1916.

Bill by the Cochran Timber Company, a corporation, against E. L. Fisher to remove a cloud upon complainant's title to certain land. From a decree dismissing the bill of complaint, complainant appeals. Reversed.

*Joseph J. O'Connor* (*A. W. MacLeod,* of counsel), for complainant.

*A. F. Dixon,* for defendant.

STEERE, J. Complainant filed this bill to remove a cloud from its title to 160 acres of land in Baraga county, alleged to be caused by a subsequent quitclaim deed from its grantor to defendant Fisher, but recorded prior to its own deed.

Defendant, answering, traversed and denied the various allegations of complainant's bill, and alleged by way of cross-bill that the deed to said land under which complainant claims title was procured for an inadequate consideration, through false and fraudulent representations, from Eliza Abts, their common

grantor, while she was intoxicated, beyond control of her mental faculties, her understanding being clouded and reason dethroned, for which reasons said deed upon which complainant bases its claim of title is void, a cloud upon defendant's title and a fraud upon his rights; he therefore prays that said warranty deed from said Eliza Abts to complainant, as described in its bill, be set aside, offering to pay all moneys expended by complainant in and about said premises; also praying that complainant be required to make answer to all matters charged by defendant in that particular.

Complainant duly answered defendant's answer "taken as a cross-bill," denying its allegations and, amongst other things, saving and reserving all benefit of exception "which can be taken to the many errors and uncertainties and other imperfections in said answer taken as a cross-bill contained."

It was shown upon the hearing without dispute that Eliza Abts, who then had a good title in fee subject to delinquent taxes for some years to the land in question, conveyed it to complainant by warranty deed dated February 16, 1904, which deed, however, was not recorded until January 24, 1908, and that she subsequently, on August 1, 1907, quitclaimed the same land to defendant, who recorded his deed August 5, 1907.

Complainant's deed was procured from Mrs. Abts by its representative, named Paquette, who paid her $100 therefor. He first interviewed her upon the subject at a hotel where she was working in Nestoria, and upon the following day went with her to, or met her at, Sidnau, in an adjoining county, where she went to the office of a notary public, and there executed and acknowledged her deed to complainant in the presence of two subscribing witnesses.

The issues of fact to which the testimony taken in

the case related were the value of the land, Paquette's representations as to the amount of delinquent taxes upon said land and other inducements to secure Mrs. Abts' consent to sell, and the extent, if any, she was under the influence of liquor during the negotiations and at the time she executed the deed. The testimony of the respective sides upon these issues was in sharp conflict, and upon the printed record could scarcely be said to settle them either way beyond possible misgiving, although with the witnesses before the court the case may have assumed a different aspect.

But the preliminary and more serious question raised and urged in behalf of complainant is whether defendant can avail himself of an alleged fraud practiced by complainant's agent upon Mrs. Abts. He makes no claim of any fraud practiced upon himself, or that he was an innocent purchaser. He testified that Mrs. Abts was a distant relative of his wife and had, while living with them, told him "how this land was taken from her," that he was a traveling man and consulted with several lawyers about it; that Mrs. Abts gave him a deed so he could litigate the matter, and in consideration of the deed he agreed to give her a home and provide for her. He is here complaining of a fraud practiced upon Mrs. Abts at a time when he had no interest in this land and of which he says he was fully advised before he received his quitclaim deed to it.

The general rule is well established and has been often recognized by this court in varying language that a right of action for fraud is personal and not assignable, in part as follows:

"As assignee of the contract, Calkins cannot insist upon the fraud." *Carroll* v. *Potter*, Walker's Ch. (Mich.) 355.

"A court of equity will not countenance the assignment of a cause of action for a tort, or to set aside a

190 Mich.—31.

conveyance, or other act, as fraudulent." *Morris* v. *Morris,* 5 Mich. 171.

"The right to sue in equity to have a conveyance set aside for fraud is not assignable" (from syllabus). *Brush* v. *Sweet,* 38 Mich. 574.

"The present complainant—according to his own proofs—has merely purchased claims for the purpose of this litigation or of some litigation. He was never defrauded. * * * A right to complain of fraud is not assignable, and the claims in controversy have nothing involved which could keep them alive at all unless fraud would do so. Being nothing more than an assignment of" a cause of "action for fraud it is well settled that it will not be enforced." *Dickinson* v. *Seaver,* 44 Mich. 624 (7 N. W. 182).

"It has been held repeatedly in this State that equity will not enforce the demands of an assignee of a right to sue for fraud, when the cause of action is confined to that." *Dayton* v. *Fargo,* 45 Mich. 153 (7 N. W. 758).

"It is very well settled that an action for fraud is not assignable, and that fraud is only to be complained of by the party injured." *Lewis* v. *Rice,* 61 Mich. 97 (27 N. W. 867).

"It is also the settled rule in this State that actions for fraud and deceit are not assignable." *Stebbins* v. *Dean,* 82 Mich. 385 (46 N. W. 778).

"If Boughton committed a fraud in selling the lands to Wilson, Luther & Wilson, an action for that fraud is not assignable. * * * It is therefore unnecessary to state or discuss what then took place between them." *Chase* v. *Boughton,* 93 Mich. 285 (54 N. W. 44).

"It is well settled that the right to complain of a fraud is not assignable." *Smith* v. *Thompson,* 94 Mich. 381 (54 N. W. 168).

"If the defendants fraudulently misrepresented the facts to Tillotson, he (Tillotson) might have proceeded against them for their fraud, but his right of action is not assignable, and did not pass to complainant by virtue of the deed from Tillotson to him." *Fuller* v. *Bilz,* 161 Mich. 589 (126 N. W. 712).

On defendant's theory of the facts, Mrs. Abts' deed

to complainant was but voidable, not void, and voidable only at the instance of the party defrauded or under some disability at the time of its execution, as in case of a minor or person otherwise temporarily incompetent. This deed was witnessed, acknowledged, and on its face executed in compliance with all requirements of law. It was *prima facie* valid. Whether it appear that she executed the instrument fully understanding the nature of her act but induced to do so by the fraudulent misrepresentation of Paquette, or that by reason of intoxication her mental faculties were so clouded that she did not fully realize the nature of her act and was in effect insane, one or both, the deed was but voidable. It is undisputed that when sober she was sane and that she subsequently fully understood what she had done. A deed of one insane, if not previously adjudicated to be such or placed under guardianship, is merely voidable and can subsequently be ratified by the grantor when mentally normal, as in case of a minor upon coming of age. *Moran* v. *Moran*, 106 Mich. 8 (63 N. W. 989, 58 Am. St. Rep. 462) ; *Wolcott* v. *Insurance Co.*, 137 Mich. 309 (100 N. W. 569) ; *De Vries* v. *Crofoot*, 148 Mich. 183 (111 N. W. 775) ; *Allis* v. *Billings*, 6 Metc. (47 Mass.) 415 (39 Am. Dec. 744).

Mrs. Abts, being the owner in fee of this land, conveyed it by a regular warranty deed, *prima facie* valid, and received from the grantee a consideration therefor which she retained. Conceding this deed to be voidable, it nevertheless carried the fee to the grantee and remained in force as a valid instrument of defeasance until such time, if ever, as it would be set aside in an appropriate judicial proceeding at the option and instance of the party entitled to institute such proceeding. In the meantime, the original grantor held no title to the property, and the grantee in whom the fee rested might convey it to a *bona fide* purchaser, who

would take a title to the estate which could not be attacked.

At the time Mrs. Abts gave a quitclaim deed of the land in question to defendant she had already parted with all legal title to it. 'All that remained to her, under any theory, was the personal right to sue in equity to have her conveyance set aside for fraud. Her deed to him not only conveyed nothing but contained no warranty which might eventually carry the title to him in case her deed to complainant was later set aside, which would reinstate the fee in her as it was before the voidable deed was given. Her quitclaim does not purport to, and cannot, operate to assign her personal right to sue for a cancellation of complainant's deed on the ground of fraud. *Crocker* v. *Bellangee*, 6 Wis. 645 (70 Am. Dec. 489) ; *Graham* v. *Railroad Co.*, 102 U. S. 148.

It was the theory of the trial court and is urged here that equity having once acquired jurisdiction in the controversy can and should retain it to give full relief and make final disposition of all matters involved, and that relief should be denied complainant under the maxim that "he who comes into equity must come with clean hands." The application of this maxim is limited to the defendant in the litigation, and there can be no claim that complainant came with hands soiled in a fraudulent transaction with him. The act or transaction concerning which complainant asks relief is the taking of a deed by defendant from Mrs. Abts and recording it. Complainant had nothing to do with that transaction and was not guilty of any wrongful conduct in that connection. In obtaining this deed from Mrs. Abts who was then sole owner of the property, complainant did not perpetrate any fraud upon defendant or commit any inequity against him. The wrong must have been done to defendant himself, and not to some third party. The power in equity

to grant complete relief when jurisdiction is once taken cannot be extended to persons not parties to the suit and whose rights a party to the suit cannot take by assignment.

Defendant's entire defense is necessarily an affirmative attack upon complainant's title under the allegations in his cross-bill of a fraud practiced upon Mrs. Abts, not himself, which manifestly he could only assert as an assignee, and upon which, not being assignable, he could not be heard. As he was not entitled to file his cross-bill on the ground of a fraud practiced upon her, the court not only had no jurisdiction to grant him affirmative relief on his cross-bill, but all defense fell with it, for no other grounds of defense are shown.

It follows that in this case, as between these litigants, complainant is entitled to the relief asked, for the reason that defendant acquired no title to the land by his conveyance, and whatever right Mrs. Abts had to the cancellation of her deed to complainant on the ground of fraud and undue advantage was a personal right which she could not assign.

The record discloses that in connection with an order made by the trial court granting a "new trial," or further opportunity to take testimony upon a certain matter before final disposition of the case, it was stipulated that the statute of limitations would not be pleaded in any suit which might be commenced by Mrs. Abts to recover title to this land. Nothing in this opinion is intended or to be construed as prejudging, abridging, or to the prejudice of her rights in that respect.

The decree of the trial court is reversed, with costs, and a decree will be entered in this court in favor of complainant, as herein indicated.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, BROOKE, and PERSON, JJ., concurred.