[File No. 6380.]

CLARA C. ROACH, Appellant, v. VALETTA McKEE, and First National Bank of Hillsboro, a Corporation, Respondents.

(265 N. W. 264.)

Opinion filed January 27, 1936.   Rehearing denied February 21, 1936.

*Kaldor & Kaldor,* for appellant.

*Charles H. Shafer,* for respondent.

BURR, J. On this appeal the plaintiff insists the action is one in equity to determine adverse claims to personal property; but it is clear this is not the theory upon which the case was tried in the lower court. When the case was called for trial, a jury was impaneled as if the issue was one which should be submitted to a jury. At that time the plaintiff made no claim that the action was in fact an equity proceeding. Not only this, but throughout the entire trial the case was treated as a jury case. The court charged the jury and at no time was any intimation given that the verdict was merely advisory. After the jury

returned a verdict against the plaintiff, she made a motion for judgment notwithstanding the verdict or for a new trial in the district court. It is clear that the theory of the trial—adopted by both parties and by the court, despite the cast of the complaint—was that the issues were such as were required to be submitted to a jury, and we cannot permit a change of theory upon appeal. See Lindberg v. Burton, 41 N. D. 587, 599, 171 N. W. 616; Re Campbell, 56 N. D. 60, 215 N. W. 913.

While there is some minor dispute in the evidence with reference to the facts, nevertheless it is clear to us the salient facts involved show: that in 1928 one Roy V. Roach, a widower, and hereafter known as the father, was the owner of certain lands in Traill county; he had three daughters, one of whom was the defendant McKee, whom we afterwards term the daughter; in March, 1928, he deeded these lands to his three children reserving in himself "an estate for the full term and period of the natural life of said grantor, Roy V. Roach, the full, entire, undivided possession, use and full enjoyment of all said lands." The father lived in Nebraska but kept an account in the defendant bank, an account made up of the income from these lands. In September, 1930 the father notified the bank that the signature "Valette Roach McKee" to a check would be his signature. This was done after conference with his daughter. In this notification no limitation as to time or amount was placed upon the authority of the daughter to draw on the account; but the next day the father wrote to the bank to the effect that the purpose of giving his former notification was "so Mrs. McKee my Daughter could draw money and pay Insurance Taxes & Interest without going to court in case I was sick or passed away." The father became very ill during the year 1933 and on August 21, 1933 the daughter drew a check on the father's account for $500.00, for the purpose of paying the taxes and interest due, which check was honored by the bank. The proceeds of this check were then deposited by the daughter in the same bank in her own name, and this account is the one involved in this action. Sometime about the 1st of September, 1933, the father received notice that this check had been drawn and on or about September 4, 1933 he notified the bank in writing that he had "never authorized daughter valetta to sign checks

on my account. . . ." He was in error in this statement. The father did not notify the daughter that she was not to draw any more checks, nor did he demand of her the return of this $500.00. About September 23, 1933 the father, at a family council, directed the daughter to pay the taxes, and on October 2, 1933 the father wrote the bank saying among other things "Please dont cash any more chks unless endorsed by me only. . . . Could you say or do anything to get the money back quick." However, on the next day the father again told the daughter to pay the taxes. When the bank received this order from the father, it immediately notified the daughter and asked her for authorization to retransfer the account to her father's account. On September 6, 1933, the bank had notified the daughter that the father had wired to the effect she had no authority to draw the check and asked her not to draw further on the account until the matter could be arranged between her and her father. Thereafter and prior to October 17 the daughter drew a check for $362.00 on her own account, payable to the County Treasurer, for the purpose of paying taxes on the land involved, which check the bank refused to pay. The father died October 19, 1933 and the administratrix brings this action to require the bank to pay over the $500.00 standing in the name of the daughter and to have the money returned to the estate of the father.

While there may be some dispute as to the facts, there is ample evidence to sustain this view of the proceedings. The Bank admits the main facts and stands ready to pay the amount of the daughter's account to the one ordered by the Court. The daughter says title to this debt is in her. The jury found in favor of the defendants and the plaintiff appeals.

In the specifications of error appellant charges the court made three errors in law in the charge to the jury; erred in sustaining objection to the introduction of a letter from the father's lawyer addressed to the bank; four specifications of insufficiency of the evidence to justify the verdict; and some nine specifications wherein it is set forth that it was conclusively established the daughter did not have authority to draw the check of $500.00.

We have examined the portions of the charge to the jury said to be

erroneous and find no error therein. It is not necessary to set these forth verbatim.

There was no error in refusing to admit the letter from the father's lawyer addressed to the bank. This letter was purely hearsay and was properly excluded.

The allegations of the insufficiency of the evidence to justify the verdict are sufficiently answered by a statement of the facts as they could be found by the jury and evidently were found. It is very clear that the father authorized the daughter to draw the check which she did draw. At that time the relationship existing between the bank and the father was that of debtor and creditor, and when the check was drawn and honored the debtor reduced its indebtedness to the father. When the daughter deposited the proceeds of this check in her own name, the relationship of debtor and creditor was created between her and the bank. The money no longer belonged to the father when he deposited it in the bank, and the money obtained on the check drawn by the daughter no longer belonged to the daughter when she deposited it in the bank. This is the relationship between a bank and its depositors. See Shuman v. Citizens State Bank, 27 N. D. 599, 147 N. W. 388, L.R.A.1915A, 728; Citizens State Bank v. Iverson, 30 N. D. 497, 153 N. W. 449; McLaughlin v. First Nat. Bank, 6 Dak. 406, 43 N. W. 715. We are not concerned with whether it was a book transaction or actual cash was taken out and then deposited. The check on this new account was not drawn in the name of the father, nor drawn under the authorization given by the father to the bank. Ostensibly the account is the account of the daughter, and this is the account which is the subject of the controversy.

The merits of the controversy are with the daughter. It is the duty of the owner of a life estate to do no act to the injury of the inheritance. Comp. Laws, § 5342. He must pay the taxes. Rev. 5357 Comp. Laws.

"The life tenant of lands is charged with the duty of paying the taxes which accrue upon the property of which he is enjoying the use, rents and profits." First Cong. Church v. Terry, 130 Iowa, 513, 107 N. W. 305. This whole subject is well treated in a note to this case found in 114 Am. St. Rep. 448. If the father, in reserving a life estate to himself, desired to relieve himself of this duty and burden,

he could have so provided in his contract with his daughters, and they, in accepting the grant would have been bound by the condition. In the absence of such exemption it became the father's duty to pay the taxes and it is immaterial how his life estate came into existence. See St. Paul Trust Co. v. Mintzer, 65 Minn. 124, 67 N. W. 657, 32 L.R.A. 756, 60 Am. St. Rep. 444; Wilson v. White, 133 Ind. 614, 33 N. E. 361, 19 L.R.A. 581; Defreese v. Lake, 109 Mich. 415, 67 N. W. 505, 32 L.R.A. 744, 63 Am. St. Rep. 584. In Prescott v. Grimes, 143 Ky. 191, 136 S. W. 206, 33 L.R.A.(N.S.) 669, the court says, regarding repairs, "The law casts upon the life tenant this burden because he receives all of the rents, income, and profits growing out of the use of the property during the life of his tenancy," and shows this rule applies also to taxes. To do otherwise would allow the tenant to commit permissive waste. While he reaps its benefits, he must guard its interests, and to a certain extent he is the trustee of the property for the benefit of the remaindermen. Smith v. Van Ostrand, 64 N. Y. 278; Montfort v. Montfort, 24 Hun, 120. See also Wright v. Stice, 173 Ill. 571, 51 N. E. 71.

In the case at bar the father recognized this duty. When he deeded the land to his daughters, he did not exempt himself from the payment of taxes. On the contrary he paid the taxes for several years and the record shows that at a family conference he authorized the defendant daughter to pay the taxes. There was no exemption as to the payment of interest on the mortgages, and therefore he had this duty also. The daughter was authorized to draw on his account; she did so and according to the record the amount of interest and taxes far exceeded the amount drawn by her. This money was in effect given to her by her father to pay his debts against her land and she had an interest in seeing that this was done. After much vacillation the father told the daughter to pay the taxes. So far as the record shows this was the last of his contradictory orders. At that time the legal title to the account was in her. There was no revocation of this order.

Much is said about the relationship of principal and agent existing between the father and the daughter. Such relationship did exist, and when the daughter, as the agent of the father, drew on his account, she was acting within the scope of her authority. The money was drawn

for the specific purpose for which she was authorized to draw checks, even if we hold that her authority was limited by the letter from the father to the bank written without notice to her. This is not an action for money had and received. The administratrix says the account in the name of the daughter is hers—that the title to it is in her. But the debt of the bank is to the daughter. No requests were made by the plaintiff asking the jury to be instructed on any theory other than the one upon which the trial was had—in fact, no requests for instruction were made whatever. If the estate has a claim against the daughter, it may list the claim among its assets; but it is clear the account in the bank is the account of the daughter and so the judgment is affirmed.

BURKE, Ch. J., and MORRIS, CHRISTIANSON and NUESSLE, JJ., concur.

BURR, J. (On petition for rehearing.) Plaintiff insists this action is in fact an equitable one, should be so treated by this court, and, therefore, under the holding of this court, she may follow and reclaim property belonging to the estate in any form into which it may have been changed. This equitable principle is established in this jurisdiction. See Merchants Bank v. Schatz, 59 N. D. 365, 230 N. W. 18.

Appellant cites the case of Prondzinski v. Garbutt, 8 N. D. 191, 77 N. W. 1012; but this case is of no avail to the appellant. In the case cited the question discussed was the effect of the motion for a new trial based upon an objection that the complaint did not state facts sufficient to constitute a cause of action. We held that the objection was good if the complaint was attempting to set forth an action at law; but not good in the case because it was an equitable one. The trial court granted a new trial and the appeal was taken from that order. In the case cited the jury found for the plaintiff and we held:

"That when the records of a case show that a case exclusively of equity jurisdiction has been tried as an action at law, and to a jury, and that a new trial had been granted by the trial court, this Court would sustain the order of the trial court setting aside the verdict and granting a new trial, regardless of the fact that neither party had made objections to such method of trial. Having reached the conclusion that the facts of this case make it one solely of equitable cognizance, the duty

then fell upon the trial judge to find the facts himself. The verdict of a jury or findings of a referee would be simply advisory, and entirely subject to his control."

In the case at bar the verdict of the jury was against the plaintiff. The trial court, on the motion for a new trial, reviewed the evidence and adopted the same view. The specifications of error nowhere allege that the trial court made no findings of fact, but they do contain several paragraphs setting forth the "insufficiency of the evidence to justify the verdict or sustain any judgment to be entered thereon," and, in addition, the specifications of error set forth nine paragraphs as: "Specifications of facts conclusively established that the defendant, Valetta McKee, did not have authority to draw the $500.00 check in question and to spend the same in the way she had intended to."

The specifications of error also contain four paragraphs setting forth wherein the court erred in charging the jury and in the admission of evidence.

It is true that the trial court, in the memorandum opinion filed on the motion for a new trial, says: "Counsel for plaintiff contend that the fact that this action was tried before a jury does not cut any figure as in equitable actions the court has jurisdiction, and may submit issues of fact to the jury for decision, but that the verdict is advisory in character, and not binding upon the court; that in such cases if the court finds the evidence contrary to the verdict, the trial court may disregard the verdict and make its own findings according to the evidence in the case."

The court, however, does not say that he would adopt this view upon this motion for a new trial, or change the theory of trial. In the memorandum opinion he states distinctly "This action was tried by a jury without any objection from either the plaintiff or the defendant."

Even if we now adopt appellant's contention, it will not benefit her. When the plaintiff seeks equity she must do equity. As has been pointed out, it was the duty of the father to pay the taxes and the interest on the daughter's land, and he authorized the daughter to draw a check for this purpose. The administratrix stands in no better position than the father. She makes no offer to pay the taxes or the interest as a prerequisite to the return of the money, and if she wants a court of

equity to assist her, she must offer to do equity. It is not sufficient to say that if the daughter is compelled to pay the taxes and interest, she may file a claim against the estate. Having been entrusted by the father with his money to pay a debt against her property which he was obligated to pay, the estate cannot recover it from her without offering to pay the debt.

Whether we treat the case as a law case or an equity case, the plaintiff has no standing in this court on this appeal, in view of the decision in the court below. This decision is amply sustained by the evidence. The petition for rehearing is denied.

BURKE, Ch. J., and NUESSLE, MORRIS and CHRISTIANSON, JJ., concur.