[File No. 6412.]

STATE OF NORTH DAKOTA UPON THE RELATION OF THE BOARD OF RAILROAD COMMISSIONERS OF THE STATE OF NORTH DAKOTA, as Trustee for J. C. Schleicher, Doing Business as the Schleicher Elevator, an Insolvent Warehouseman, Appellant, v. BURT STATE BANK, a Corporation, Respondent.

(267 N. W. 337.)

Opinion filed May 21, 1936.

*J. A. Heder,* and *W. H. Stutsman,* for appellant.
*Jacobsen & Murray,* for respondent.

BURR, J.   One J. C. Schleicher, doing business as the Schleicher Elevator, at Burt, North Dakota became insolvent and his elevator closed February 21, 1931.   Thereafter the board of railroad commissioners was appointed trustee.

Immediately prior to November 17, 1930, Schleicher had outstanding wheat storage tickets to the amount of 21,140 bushels, and available for redemption of said tickets but 10,500 bushels, which amount included the wheat which is the subject of this controversy.

On November 17 and 18, 1930, Schleicher shipped and sold from his elevator in the name of the defendant four cars of wheat containing

6,015 bushels of wheat worth $3,447.56. From and after that time until the elevator was closed the shortage on stored grain was never less than 5,168 bushels of wheat.

Plaintiff sued to recover from the defendant the value of the grain shipped in its name. The defendant interposed an answer containing a general denial, together with several defenses not necessary to consider.

The case was tried to the court without a jury. At the trial of the case the defendant claimed this wheat, shipped in its name, had never belonged to the warehouse, had always been its grain, and, therefore, it was entitled to the proceeds.

The trial court found for the defendant and judgment was entered in its favor for the dismissal of the action. Plaintiff appealed from this judgment and the whole thereof demanding a trial de novo.

Appellant specifies as error that the court erred in sustaining the defendant's motion for judgment, the evidence being insufficient to sustain said judgment in this "that it clearly appears therefrom that the facts stated in the plaintiff's complaint are true, and that the four cars of wheat shipped out from the Schleicher Elevator on the 17–18 of November, 1930, were stored wheat belonging to the depositors of said elevator." Also, that the evidence is insufficient to justify the order and judgment of the court, reiterating the above quoted portion.

At the outset we are met with a practice question. Respondent says that this is an action triable to a jury and that "no motion for new trial or otherwise was made in the lower court, which is a condition precedent to enable this court to review the testimony. No error of the trial court is assigned or specified with reference to ruling on the sufficiency of the testimony." In support of this contention the respondent cites Updegraff v. Tucker, 24 N. D. 171, 139 N. W. 366, American Case & Register Co. v. Boyd, 22 N. D. 166, 133 N. W. 65, and chapter 131, Session Laws of 1913.

Respondent overlooks the provisions of § 7846 of the Supplement as amended by chapter 208 of the Session Laws of 1933. It is not necessary to set forth that portion of this statute dealing with this point as it is cited in Jones v. Grady, ante, 479, 266 N. W. 889, decided in April of this year. It is clear from this portion of the statute that a jury case, where a jury has been waived, is in the category of an equity

case, so far as procedure is concerned. The statement of the case and the specifications of error are sufficient to justify a trial de novo.

The sole ground for appeal is the insufficiency of the evidence to sustain the judgment, the plaintiff insisting that it clearly appears from the record "that the four cars of wheat shipped . . . were stored wheat belonging to the depositors of said elevator."

It is the contention of the appellant that these four carloads of grain were shipped in the name of the defendant to apply on a debt which the warehouseman owed the bank.

The record shows conclusively that for some time prior to August 12, 1930 the warehouse operations of J. C. Schleicher were financed by the Commission firm of Tenney Company. In 1929 S. had an open account with the Tenney Company, but his overdraft increased to such an extent that they "permitted him only to make checks in payment of grain purchased, with an understanding with the Burt State Bank that they were to cash these checks and, if the checks tallied with the daily report sent in by Mr. Schleicher, they would be honored in Minneapolis. It was a so-called draft envelope system whereby the Burt State Bank—The arrangement was that the Burt State Bank was to take up these checks and send them in daily in an envelope, and the basis of this envelope was a draft on the Tenney Company, and, if the checks covered purchases in good faith, they would be paid by the Tenney Company on presentation at the end of the month. These elevator checks were returned to Mr. Schleicher together with a statement of his account. At no time during the crop year of 1930 was it permissible for Mr. Schleicher to make any open drafts."

Despite this arrangement, however, the warehouseman drew on the Tenney Company for $3,000 on or about August 12, 1930, and the defendant advanced the money to him on the draft. The money thus secured was applied by the warehouseman on other accounts, and the Tenney Company refused payment of the draft which left the warehouseman indebted to the bank in the sum of $3,000. At that time the warehouseman was vice-president of the bank. (He is now cashier.)

On August 12, 1930 the Tenney Company sent one Borgen to the elevator, and from that time on for some time the commission company's representative scanned each purchase and if it was in good

faith, marked the check with the word "approved." The defendant then would pay the check, draw on the commission firm, and the drafts were honored. Borgen remained until October 10 and was succeeded by one Roberts, who remained with the warehouseman until about the 10th or 11th of November, 1930. From that time on the Tenney Company ceased to finance the warehouseman.

The record is quite conclusive that when S. could no longer be financed by the commission firm he applied to the bank for financial assistance, and after some deliberation the bank agreed to honor his checks issued in payment of grain. The method, as claimed by the defendant, was that the amount was ascertained by S. furnishing the bank every evening with evidences "to correspond with the checks that were written to represent their grain which was in the bin, just a piece of paper," and that this was solely for grain to be purchased for the defendant and which was kept in special bins separate and apart from any other grain belonging to the warehouseman. There is no evidence showing how other cash sales were financed or storage tickets redeemed, if any.

It is the contention of the appellant that this arrangement was merely a financing arrangement, somewhat similar to the arrangement with the commission firm, and that the wheat in controversy was shipped in the name of the bank in order to reimburse the bank for the money advanced on the $3,000 draft on the Tenney Company which the company had refused to pay. Contra, the defendant claims that the $3,000 was repaid to the bank under an arrangement whereby a C. D. for $1,000, belonging to the wife of the warehouseman, was applied on the debt, together with her checking account of $500, and that the warehouseman gave the bank a mortgage for $1,500 to secure the balance. The trial court found that the $3,000 "was not paid by delivering the four carloads of grain above mentioned."

We are not unmindful of the weight to be attached to the findings of the trial court (Griffith v. Fox, 32 N. D. 650, 156 N. W. 239; State Bank v. Maier, 34 N. D. 259, 268, 158 N. W. 346; Baird v. Goforth, 54 N. D. 805, 211 N. W. 587; Vorachek v. Anderson, 54 N. D. 891, 896, 211 N. W. 984; Thede v. Rusch, 65 N. D. 34, 256 N. W. 409; Fargo Glass & Paint Co. v. Smith, ante, 389, 266 N. W. 100; and cases cited in these decisions) but we are not satisfied with the

quality of the proof presented to us. It is clear from the record that important evidence is in existence, which can be secured readily. We do not deem it proper at the present time to set forth the evidence already adduced, as the evidence which should be in existence in the possession of the defendant may have an important bearing on the case.

Section 7846 of the Supplement, as amended by § 208 of the Session Laws of 1933, provides: "On appeal in the supreme court in any action tried by the court, but without a jury, if it appear to the court that any material evidence was excluded, the court may issue a mandate to the trial court to take such evidence without delay and to certify and return it to the supreme court, and all proceedings in the supreme court shall be stayed pending the return of such evidence. . . ."

This portion of the statute was unamended by the Session Laws of 1933, and in the case of Bernier v. Preckel, 60 N. D. 547, 236 N. W. 242; Baldwin Piano Co. v. Wylie, 63 N. D. 216, 247 N. W. 397; Holden v. Walker, 63 N. D. 372, 248 N. W. 318, and other cases, was held sufficient authority to remand the case for the taking of further testimony. This is in harmony with the established rule in this jurisdiction. In Landis v. Knight, 23 N. D. 450, 137 N. W. 477, in trials de novo in court cases, we followed the statute which permitted the Supreme Court to order a new trial, "if it deems such course necessary to the accomplishment of justice." In Williams County State Bank v. Gallagher, 35 N. D. 24, 159 N. W. 80, we followed the same rule and set forth what situations should be elucidated and required testimony thereon. However, it is not necessary to order a new trial in the technical sense; the appellate court retains jurisdiction.

We remand the case to the district court for the taking of testimony on two issues, viz.: What do the books and records of the defendant show regarding the alleged settlement made by Schleicher for the money furnished on the dishonored $3,000 draft drawn on the Tenney Company; and what do these records of the bank show regarding the arrangements made with the warehouseman for financing his operations during the period between November 11, 1930 to the closing of the elevator on February 21, 1931. Other testimony on these two issues may be supplied by either party.

The case, therefore, is remanded to the district court for the purpose of taking such testimony without delay, and the trial court is required to make additional findings based on such testimony and certify and return the testimony and findings to this court. In the meantime we retain jurisdiction of the case.

BURKE, Ch. J., and CHRISTIANSON, MORRIS and NUESSLE, JJ., concur.