[File No. 6496.]

CALMER O. NORD, Respondent, v. C. A. NORD and Citizens State Bank of Enderlin, North Dakota, a Corporation.

CITIZENS STATE BANK OF ENDERLIN, NORTH DAKOTA, a Corporation, Appellant.

(282 N. W. 507.)

Opinion filed March 23, 1938.   On rehearing December 9, 1938.

*Kvello & Adams,* for appellant.

*C. G. Bangert,* for respondent.

BURR, J. This is an action to determine adverse claims to the northeast quarter of section 13, township 136, range 56, in Ransom county.

Prior to December 14, 1927, the record title to the land was in Bertha A. Nord, wife of the defendant Nord and mother of the plaintiff Nord, and in December 1927, Bertha A. Nord died leaving as her heirs her husband, the defendant Nord, and six sons and daughters, including the plaintiff. The Nord family had the impression that

some time prior to her death the mother had deeded this land to the father. After the death of the mother search was made but no deed was discovered and it is an accepted fact that no such conveyance was ever made.

The plaintiff is the son of the defendant C. A. Nord, and hereafter such parties are designated son and father.

In November 1931, the son executed and delivered to the bank a promissory note for over two thousand dollars, due September 1, 1932, which note was signed by his father. On December 19, 1933, the father gave a note to the bank, due May 1, 1934, to renew this indebtedness, and for security gave a mortgage upon the land involved. In this mortgage the father covenanted with the bank that he was lawfully seized of said premises; that he had good right to convey the same; that they were free from all encumbrances; that the bank should "quietly enjoy and possess the same; and that the said party of the first part (the father) will Warrant and Defend the title to the same against all lawful claims." The mortgage contained the usual agreement for foreclosure in case of default and was taken without any record examination of the title—all parties believing the father to be the owner. The record further shows that though the indebtedness was the indebtedness of the son, the father was perfectly willing to give the renewal note and execute the mortgage as he had signed the original note with the son and the land was eventually to go to the son, the plaintiff, in any event.

In October 1934, the note being unpaid, an attempt was made by the father to refinance this debt through the means of a federal loan. These negotiations failed, and on October 25, 1934, the cashier of the bank wrote the plaintiff telling him of the failure and saying:

"The Sec'y. Treasurer for the Federal Land Bank . . . stated that if it is the intentions of your father to give you this quarter of land that it would be the best that your father give you a Deed for the land and that you make the application yourself.

"I was over and saw your father to-day and he stated that this would be all right with him, and he give us a Deed for the land, this deed is made out to you and we are holding the Deed here, and this Deed will be recorded as soon as we get the loan through. . . ."

The suggestion was made also that the plaintiff make application

to the Federal Land Bank to refinance the indebtedness, and this was done in November of that year. These negotiations failed, though the Land Bank had extended the time for completion of details. In April 1935, while these latter negotiations were in progress, an action was commenced by the bank to foreclose the mortgage—the father and the son being made defendants. Both defaulted, judgment of foreclosure was rendered, execution issued, the land sold to the bank on July 10, 1935, for the full amount of the indebtedness with costs, and thereafter the sale was confirmed. On July 13, 1935, the certificate of sale was issued by the sheriff to the bank and duly recorded.

After July, 1935, and after the negotiations to refinance were abandoned entirely, an abstract of title was obtained. Then it was disclosed to all parties that the record title to the land was in the mother, and we find as a fact that none of the Nord family knew of the status of the title at that time.

On September 5, 1935, counsel for the bank wrote to the plaintiff stating, among other things:

"We have been asked by your father to clear up a question of title to the $E\frac{1}{2}$–13–136–54, on the $NE\frac{1}{4}$ of which he is now negotiating for a loan. . . .

"The abstract, however, shows that he only owned a one-third interest in this and the title came to your mother in 1904. . . .

"He . . . is arranging to deed the $NE\frac{1}{4}$ to you, subject, of course, to the new financing of the mortgage which is being held up pending this arrangement. It is necessary, however, to make the title good to get quitclaim deeds from the children and we have secured deeds here now from Alfred, Charlie, Arne and your sister, Bertha at Enderlin. . . ."

The letter enclosed a quitclaim deed which the plaintiff executed. In September 1935, quitclaim deeds from the other children to the father were executed and delivered.

The quitclaim deed to the father from Arne and Charlie Nord and Bertha Peterson, three of the children, is dated September 4, 1935, and the grantors therein "Grant, bargain, sell, remise, release and quit-claim unto the said party of the second part (the father), and to his heirs and assigns, forever, all their right, title, interest and estate in

and to the . . ." premises involved here. Quitclaim deeds from the other children, including the plaintiff, are in the same general form.

In the meantime the bank, through its counsel, and, as we find, for the purpose of establishing heirship so as to improve its own interest, commenced proceedings in the county court, and thereafter by decree dated October 9, 1935, it was determined that the father, together with his six sons and daughters, were the sole heirs of Bertha Nord and that on her death the father had a one-third interest in the land and each of the children a one-ninth interest.

On October 2, 1935, the plaintiff and his brothers and sisters notified the bank *and the father* that they had cancelled "and are withdrawing the quitclaim deeds which we, the undersigned, or any of us, have delivered to C. A. Nord. . . . These deeds were given upon the representations that we had no interest in this land or property, and that they were required merely to clear up a technical defect in the title. The deeds were given entirely without consideration and under a misapprehension as to the facts, and upon a misrepresentation as to such facts. . . ."

On October 2, 1935, the brothers and sisters executed a quitclaim deed to the plaintiff, purporting to convey the premises involved. This quitclaim deed merely conveys to him "all their right, title, interest, claim or demand in and to the following tract or parcel of land . . ." and also the grantors assigned "to the grantee, his heirs, executors or assigns any and all interest they have in the estate of Bertha Nord, deceased."

In April, 1936, this action was commenced and the complaint is in the usual statutory form.

The answer of the bank traces the chain of title into the father and in addition sets up the doctrine of estoppel as against the son alleging that in the judgment of foreclosure in the action in which the son was the defendant it was determined "that the interest of . . . Calmer O. Nord (the son) in and to the said real estate was subsequent and inferior to that of the lien of the . . . Citizens State Bank . . . and the said Calmer O. Nord and the other defendant, Charles A. Nord, be forever barred and foreclosed of all right, title, interest and equity of redemption in and to said mortgaged premises or any part thereof, unless the same shall be duly redeemed as provided by law

. . .; that no appeal has been made or attempted by the said Calmer O. Nord from said judgment or any part thereof . . . and that said judgment has become final . . . and that by virtue thereof the plaintiff is estopped to again litigate or question the title of the said Charles A. Nord in or to the premises described in the complaint;" and that the father, Charles A. Nord, was by said judgment forever barred and foreclosed of all right, interest, and equity of redemption in said premises unless the same was duly redeemed.

The plaintiff relied and, among other things, alleges that, while he with his brothers and sisters, did execute and deliver quitclaim deeds to the father, the same were signed and delivered without any consideration and were obtained from the grantors "by false and fraudulent representations on the part of the defendant, Citizens State Bank . . ." and that the fraudulent representations consisted in the statements that the mother had actually conveyed the premises to the father but that the deed had been misplaced and it would therefore be necessary to execute quitclaim deeds "to cure a technical defect in said title and make said title marketable in the defendant, C. A. Nord (the father); that said quitclaim deeds were necessary to avoid proceedings in county court to establish heirship . . . and to establish the title in the defendant, C. A. Nord;" that these statements were false and known to be false by the defendant bank and that thereafter the grantors made demand upon the defendant bank and upon the father for the cancellation and the return of the quitclaim deeds. The plaintiff further alleges that at the time of the pendency of the action to foreclose the mortgage he had been informed that the bank was merely attempting to obtain the record interest of the father, and that the bank received the mortgage knowing that the father owned only an undivided one-third interest.

The trial court found that the mortgage had been duly executed and foreclosed and that thereby the bank obtained a one-third interest in the land. The court further found that the quitclaim deeds given by the children to the father should be cancelled as never having become effective, and that the brothers and sisters deeded their undivided interest in and to the land by quitclaim to the plaintiff herein and that the plaintiff became the owner of their undivided interests. The court, therefore, ordered judgment to the effect that the plaintiff was

the owner of a two-thirds interest in the land and the defendant bank the owner of one-third. Judgment was so entered and the defendant bank appeals demanding a trial de novo.

The theory of the plaintiff, as outlined in his brief, is that he has the right in this action to attack the validity of the deeds given by the brothers and sisters as grantors to the father on the ground that these were obtained through a misrepresentation of purpose and thereafter these grantors conveyed the property to him. It is also the contention of the plaintiff that though he had been made a party to the foreclosure proceedings, had been personally served, and made default, nevertheless, his interest in the premises was not in any way affected by that judgment; that his title to an interest in the premises was adverse and paramount to that of his father, the mortgagor; that it was not derived from his father; that he was not a proper party to that foreclosure suit, it being merely an action to foreclose the mortgage given by the father; that he is not precluded in this case from setting up his interest and that the judgment in the foreclosure worked no estoppel of him.

We need not consider this latter proposition. The fact remains that he himself quitclaimed to the father and therefore conveyed to the father his entire interest. The evidence shows quite conclusively that he knew the deed was wanted in order to have the father make good the mortgage he had given to secure the son's debt. He, himself, was offering to refinance this debt by title in himself. Whatever the son may attempt to show as to the intent of his brothers and sisters in quitclaiming to the father, it is clear he did not quitclaim to the father so that the father could convey to him, except that his interest would be subject to that of the bank.

The plaintiff must rely upon the strength of his own title. Grandin v. La Bar, 3 N. D. 446, 448, 57 N. W. 241; Conrad v. Adler, 13 N. D. 199, 100 N. W. 722; Brown v. Comonow, 17 N. D. 84, 114 N. W. 728; D. S. B. Johnston Land Co. v. Mitchell, 29 N. D. 510, 151 N. W. 23; Carpenter v. Smith, 76 Ark. 447, 88 S. W. 976; Krotz v. A. R. Beck Lumber Co. 34 Ind. App. 577, 73 N. E. 273; Shelton Logging Co. v. Gosser, 26 Wash. 126, 66 P. 151. The record shows that at the time the brothers and sisters quitclaimed to the plaintiff they had no title to the land. There can be no question but

what the quitclaim deeds from the children to the father were delivered. In their notice they so state. Such delivery is presumed to be on the date of the grant (Comp. Laws, § 5496), and as a grant cannot be delivered to the grantee conditionally, such "delivery to him or to his agent as such is necessarily absolute; and the instrument takes effect thereupon, discharged of any condition on which the delivery was made." (Comp. Laws, § 5497.) See McGuigan v. Heuer, 66 N. D. 710, 268 N. W. 679. See also Hojnacki v. Hojnacki, 281 Mich. 636, 275 N. W. 659. It is not claimed there was any condition attached to the delivery.

There is no dispute but what the children intended to give to their father all title and interest they had, whatever may have been their reason for so doing, and the general rule is delivery of a deed with intent to pass title does pass the title, and the surrender of such deed thereafter by the father would not revest the title in them. Slaughter v. Bernards, 97 Wis. 184, 190, 72 N. W. 977, 979. See also Botsford v. Morehouse, 4 Conn. 550; Tabor v. Tabor, 136 Mich. 255, 99 N. W. 4–6; Green v. Hayes, 120 Minn. 201, 139 N. W. 139. Consequently, the return of the deeds, even had the demand been complied with, would not have revested the title in the grantors. It will be noted that the notice of an attempted cancellation and withdrawing of the quitclaim deeds, signed by the vendors, is addressed to the vendee, the father, as well as to the bank.

The plaintiff claims that the quitclaim deeds given by his brothers and sisters to the father were obtained by the bank through misrepresentation. There is no claim that the character of the instrument was misrepresented. The plaintiff does not contend that the bank deceived or attempted to deceive the grantors into believing that the instruments were other than deeds. It is clear they intended them as deeds. The alleged misrepresentation is as to the reason for giving them and the purpose for which the father, the grantee wanted them. This is not an action on the part of such grantors to cancel the deeds, or to revest title in themselves. The father is making no complaint as to misrepresentation and these grantees are not parties to the action.

Such contention is not available to the plaintiff in this action. In Crocker v. Bellangee, 6 Wis. 645, 70 Am. Dec. 489, it is shown that a deed obtained by fraudulent representations of the grantee himself is

not absolutely void, and that the subsequent conveyance by the grantor does not have the effect of avoiding the former deed, and further, that even if the grantor had a right to avoid the deed on the ground of fraud, such right cannot be transferred to another so as to enable the transferee on that ground to attack the grantee's title. This case is cited as authority in Graham v. La Crosse & M. R. Co. 102 U. S. 148, 156, 26 L. ed. 106. The numerous cases cited in the note to 70 Am. Dec. 492 are illuminating.

The plaintiff is the grantee in the subsequent deeds given to him by his brothers and sisters, and he knew of the prior quitclaim deed to the father before he acquired the property which he says now that his grantors claim was secured through fraud. In Cochran Timber Co. v. Fisher, 190 Mich. 478, 157 N. W. 282, 4 A.L.R. 9, it is shown that the deed to the prior grantee (the father is the grantee in the case at bar) was voidable at the instance of the grantor and was not void. Therefore the plaintiff herein, the grantee in the subsequent deed, could not avail himself of the defense of fraud, which is purely equitable and available only to the grantor. We are not passing upon the rights of the grantors—that is, the brothers and sisters. They are not parties herein.

So far as this record shows no action or proceeding of any kind was ever commenced by any of the children against the father to have their quitclaim deeds to him cancelled or set aside. It is the claim of the plaintiff that the work of obtaining these deeds was performed by the bank through its agents for the purpose of vesting the title in the father in the attempt to make its mortgage good as to the entire tract of land rather than to protect the interest that the father had therein or the interest of the heirs of Bertha Nord. The plaintiff alleges that the grantors would not have executed those deeds had they understood the real purpose.

There is a great deal of testimony with reference to the methods used to secure these deeds, the ignorance of the parties as to the purpose for which the quitclaim deeds were obtained, and misunderstanding on the part of the children. However, we do not consider this pertinent to the case. The plaintiff is not in position to raise this question. When he obtained his quitclaim deeds from his brothers and sisters they had already transferred their interest and they are not

attacking the deeds they gave to their father. When the brothers and sisters conveyed to the plaintiff they gave only what interest they had, which in this case was nothing, and plaintiff is not suing them for failure of consideration.

Neither can the plaintiff contest the quitclaim deed which he himself gave to his father. He knew the purpose of this quitclaim deed when he gave it. His letters show this. The debt secured by the mortgage was his debt, the mortgage was given by the father to secure the payment of this original debt which was evidenced by the note signed by the father and son and afterwards renewed by the father in the note which was secured by the mortgage.

In his reply plaintiff alleges: "that at the time of the death of Bertha A. Nord, referred to in defendant's Answer, and for some time prior thereto, it was generally understood and agreed between the various members of the family of the said Bertha A. Nord that the real estate referred to in this action should be and was the property of this plaintiff and the title thereto would eventually be conveyed to him." Knowing this, he gave his father a quitclaim deed conveying all of his interest.

There was some correspondence between the plaintiff and the bank in which the bank notified the plaintiff that if the negotiations were not speeded there was danger the preliminary commitment of the Federal Land Bank would be cancelled, and by letter of April 8, 1935 the plaintiff wrote the bank asking the bank to accept whatever would be the net amount of the loan and take crop security for the taxes which they had paid. It is clear the plaintiff knew that whatever assistance the bank was rendering in the matter of getting the title straightened and the loans obtained was for the purpose of collecting its own debt. He knew that the title to the land was being placed in his father's name for that purpose, and when the suggestion was made that the father should deed the land to him it was because the father's negotiations had fallen through and it was hoped that negotiations could be completed through the plaintiff. The quitclaim deed which the plaintiff gave to the father was not executed until September 1935—almost five months after the plaintiff's letters to the bank.

The plaintiff is not in position to maintain this action for he has no title whatever; consequently, the controversy is between the bank and

the father. But the father defaulted in this case. The foreclosure proceedings are regular, the father never redeemed, and the bank is the owner of the father's interest. Through the quitclaim deeds given to him by his children he obtained title to the entire tract. True this was after the foreclosure proceedings were had and the certificate of sale issued, but the after-acquired title of the father accrued to the mortgagee. Section 6731 of the Compiled Laws provides: "Title acquired by the mortgagor subsequent to the execution of the mortgage inures to the mortgagee as security for the debt in like manner as if acquired before the execution."

The provision of this statute is not limited to title acquired after execution of the mortgage and before its foreclosure but is applicable after the foreclosure of the mortgage. See Merchants Nat. Bank v. Miller, 59 N. D. 273, 229 N. W. 357. Consequently, the title acquired by the father inured to the benefit of the bank. The father is not contesting the right of the bank to this after-acquired title.

This is a trial de novo, and though we give appreciable weight to the decision of the trial court in determining the facts, we are required to try the case anew, and there is no real dispute as to the essential and controlling facts in this case.

The record shows without dispute that the father became the owner of all of the premises after he gave his mortgage to the defendant bank and that the plaintiff obtained no interest through the quitclaim deeds executed to him by his brothers and sisters. Consequently, the defendant bank is entitled to a judgment declaring that neither the father nor the son has any interest in and to these premises as against the bank. Judgment will be entered accordingly.

CHRISTIANSON, Ch. J., and MORRIS, J., concur.

NUESSLE, J. (specially concurring). I concur in the result reached in the foregoing opinion. I think, however, that it is not necessary to pass upon the proposition covered by the fourth paragraph of the syllabus. As to that, I express no opinion. A meticulous examination of the record convinces me that the evidence does not establish fraud in the procurement of the deeds the plaintiff seeks to set aside by that

degree of proof required in such cases. On this account the plaintiff has not made a case.

SATHRE, J., I concur in the views expressed by Judge NUESSLE.

BURR, J. (On rehearing.) The plaintiff presented an earnest petition for rehearing, the gist of which is "that the Appellate Court disposed of the case, and entered its Judgment, upon entirely different theories than those which were presented to the Trial Court and upon which the case was tried in the Court below; the Appellate Court did not consider nor decide a single proposition decided by the Court below, nor set out one reason why the holding of the Court below should be reversed. That it does not reverse the holding of the Trial Court but sets up an entirely different reason for holding as it does."

He elaborated to show what he considers were the issues presented to the trial court, stating that the parties and the trial court agreed the question of the validity of the quitclaim deeds given by the children to the father was involved and that this included the question of the consideration for the deeds and whether they were obtained voluntarily. Petitioner also maintained that the issues as formulated required determination of "the effect of the judgment rendered on June 3, 1935 in the foreclosure action conducted by the Citizens State Bank against Calmer O. Nord (plaintiff here) and C. A. Nord (one of the defendants here), upon the rights of Calmer O. Nord in the real estate involved in the action; is the judgment in that action res adjudicata so that Calmer O. Nord is estopped from claiming any interest in the real estate adverse to the Citizens State Bank," and that the trial court so considered these as the issues involved. A rehearing was granted and both sides heard.

On this appeal the appellant demanded a trial de novo in this court, as it had a right to do under the provisions of § 7846 of the Supplement, which provide that on a trial de novo the "Supreme Court shall try anew the question of fact specified in the statement or in the entire case, if the appellant demands a retrial of the entire case, and shall finally dispose of the same whenever justice can be done without a new trial, and either affirm or modify the judgment or direct a new judgment to be entered in the district court. . . ."

Because of such provisions, "It is for this court to construe the pleadings and determine the issues involved in each case that comes before it. This is peculiarly so in a case which comes here for trial de novo." Patterson Land Co. v. Lynn, 44 N. D. 251, 253, 175 N. W. 211, 212.

The terms "tried anew" and "trial de novo," as pointed out in Christianson v. Farmers' Warehouse Asso. 5 N. D. 438, 443, 67 N. W. 300, 301, 32 L.R.A. 730, are not used with extreme accuracy. There is no new evidence adduced in this court. "The case must be decided upon a record already prepared by a judicial tribunal. This court simply reviews the record. . . ."

We have held repeatedly that "On a trial de novo in the Supreme Court the findings of the district court are entitled to and will be given appreciable weight." Donovan v. Johnson, 67 N. D. 450, 274 N. W. 124. This is because of the superior opportunities to observe the demeanor of witnesses, pass upon their credibility, and interpret the indefinable aura of the trial. Nevertheless the decision is not binding upon this court. This court is required to try the case anew upon the record and to decide the facts independently of the trial court's determination. Fargo Glass & Paint Co. v. Smith, 66 N. D. 389, 266 N. W. 100; State ex rel. Bd. of Railroad Comrs. v. Burt State Bank, 66 N. D. 529, 267 N. W. 337. Such findings of the trial court are not controlling upon a trial de novo. Passenger v. Coan, 61 N. D. 569, 238 N. W. 773.

In deciding the case this court must determine whether all of the issues raised and all of the questions presented need to be determined. The appeal is heard upon the issues framed by the pleadings and the theory of the case adopted at the trial. It is well settled that "Where a case is presented to this court on appeal from the decision of the district court, the appellant cannot be permitted to abandon the theory upon which the case was tried in the lower court and present his appeal on a different theory." Roach v. McKee, 66 N. D. 304, 265 N. W. 264; Re Campbell, 56 N. D. 60, 215 N. W. 913; Lindberg v. Burton, 41 N. D. 587, 599, 171 N. W. 616, 620. This court does not vary the pleadings nor the issues presented by the pleadings. Neither does it adopt a theory of the case different from the theory of the trial;

but it does determine whether all questions argued need to be discussed.

This court did not overlook the respondent's statement of the controlling issues. We set forth the theory of the plaintiff in the two issues which he claims in this petition—the effect of the judgment in the foreclosure proceedings and whether such judgment worked an estoppel of him; and "the validity of the deeds given by the brothers and sisters as grantors to the father."

The decision considers both of these issues. We hold that it is not necessary to determine whether there was an estoppel. We, in effect, proceed as though he were not estopped by this judgment, thus giving the plaintiff the benefit of that view, and we consider his claims of title as if no such judgment had been rendered. Thus, one point he argued is eliminated.

We also consider the issue he raises with reference to the validity of the deeds, and hold the record shows the plaintiff is not in position to raise that question. The vital issues, that is, the issues which go to the determination of the rights of the parties, are considered and determined.

Upon the trial de novo, considering the pleadings, the proof, and the general theory adopted in the trial of the case, we find the plaintiff was claiming to be the sole owner of the property involved, but that the title he claimed had no foundation. He based his right upon deeds given to him by his brothers and sisters, who had already parted with their title. He admitted that the quitclaim deeds given by his brothers and sisters to the father had been delivered to the father. These deeds were never set aside. Plaintiff, himself, quitclaimed to his father for the purpose of assisting his father to settle with the defendant bank for the debt of the plaintiff. The quitclaim deeds to him were subsequent thereto. The brothers and sisters are not parties to the action and we show he is not in position to litigate the validity of the deeds which stand between him and the deeds upon which he bases his title. The decision heretofore rendered is adhered to.

CHRISTIANSON, Ch. J., and MORRIS, J., concur.

Nuessle, J. I adhere to the views expressed in my concurrence in the result reached in the original opinion herein.

Sathre, J., I concur in the views expressed by Judge Nuessle.